LATHAM & WATKINS LLP
Douglas E. Lumish (SBN 183863)
  doug.lumish@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600

Matthew W. Walch (*Pro Hac Vice*)
  matthew.walch@lw.com
Gary S. Feinerman (*Pro Hac Vice*)
  gary.feinerman@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700

(Additional Counsel Listed on Signature Page)

*Attorneys for Defendant Hyundai Motor Company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SOELECT, INC.,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>HYUNDAI MOTOR COMPANY,<br><br>　　　　　Defendant. | CASE NO. 3:23-cv-5405-CRB<br><br>**HYUNDAI MOTOR COMPANY'S NOTICE OF MOTION AND MOTION TO STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[PROPOSED ORDER FILED CONCURRENTLY]**<br><br>Courtroom: 6 – 17th Floor<br>Judge: Hon. Charles R. Breyer<br>Action Filed: Oct. 20, 2023<br><br>Date: April 12, 2024<br>Time: 10:00 a.m. |

# NOTICE OF MOTION AND MOTION TO STAY

TO ALL PARTIES, COUNSEL OF RECORD, AND THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that on April 12, 2024 at 10:00 a.m. or as soon thereafter as the matter can be heard before the Hon. Charles R. Breyer, in Courtroom 6 of the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94012, Defendant Hyundai Motor Company ("HMC"), by and through its undersigned counsel, will and hereby does move this Court for an order staying this case pending resolution of the earlier-filed, related case that Plaintiff Soelect, Inc. ("Soelect") filed against Hyundai America Technical Center, Inc. ("HATCI"), an HMC subsidiary, in the Northern District of Illinois in March 2022. *Soelect, Inc. v. Hyundai America Technical Center, Inc.*, No. 1:22-cv-01342 (N.D. Ill.) (the "HATCI Matter").

This Court has inherent authority to stay cases, and each relevant factor favors a stay here. First, Soelect will not be harmed by a stay. Second, the parties will likely suffer hardship if the Court does not stay the case. Third, a stay will promote judicial efficiency and the orderly course of justice.

HMC's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed supporting Declaration of Melanie J. Grindle, including its accompanying exhibits, the pleadings and other papers submitted in this action, and any other materials that properly come before the Court at or before the hearing on this Motion.

Dated: March 8, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ Matthew W. Walch
    Matthew W. Walch (*Pro Hac Vice*)
    matthew.walch@lw.com
    Gary S. Feinerman (*Pro Hac Vice*)
    gary.feinerman@lw.com
    330 North Wabash Avenue, Suite 2800
    Chicago, Illinois 60611
    Telephone: (312) 876-7700

*Attorneys for Defendant Hyundai Motor Company*

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II. BACKGROUND ............................................................................................................... 2

III. LEGAL STANDARDS ..................................................................................................... 5

IV. THIS CASE SHOULD BE STAYED PENDING RESOLUTION OF THE HATCI MATTER BASED ON THE *LANDIS* FACTORS .................................................. 6

    A. Staying This Case Will Not Damage Soelect ............................................................ 6

    B. The Parties Will Likely Suffer Hardship Absent A Stay ........................................... 8

    C. A Stay Will Promote Judicial Economy and the Orderly Course of Justice ......... 10

V. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

*Aircraft Inv. Res., LLC v. Gulf Aircraft Maint. Co.*,
  No. 05-cv-6373, 2006 WL 8459699 (D. Or. Apr. 26, 2006) ............................................. 7, 11

*Aliphcom v. Fitbit, Inc.*,
  154 F. Supp. 3d 933 (N.D. Cal. 2015) ............................................................................. *passim*

*Anguiano-Tamayo v. Wal-Mart*,
  No. 18-cv-04598, 2019 WL 359417 (N.D. Cal. Jan. 29, 2019) ............................................. 12

*FormFactor, Inc. v. Micronics Japan Co.*,
  No. 06-cv-07159, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) .......................................... 9, 10

*Invista S.À R.L. v. E.I. du Pont de Nemours & Co.*,
  No. 08-cv-7270, 2010 WL 11712412 (S.D.N.Y. Mar. 31, 2010) ....................................... 11, 12

*Landis v. North American Co.*,
  299 U.S. 248 (1936) ........................................................................................................ *passim*

*Leyva v. Certified Grocers of Cal., Ltd.*,
  593 F.2d 857 (9th Cir. 1979) .................................................................................................... 5

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) .................................................................................................. 6

*Murillo v. Target Corp.*,
  No. 23-cv-03033, 2023 WL 4553597 (C.D. Cal. July 14, 2023) .............................................. 5

*Regal W. Corp. v. Neeves*,
  No. 2:22-cv-01653, 2022 WL 9467966 (D.S.C. Oct. 14, 2022) ............................... 5, 7, 10, 12

*SolarPark Korea Co. v. Solaria Corp.*,
  No. 23-cv-01181, 2023 WL 4983159 (N.D. Cal. Aug. 2, 2023) ..................................... *passim*

*SST Millennium LLC v. Mission St. Dev. LLC*,
  No. 18-cv-06681, 2019 WL 2342277 (N.D. Cal. June 3, 2019) ..................................... 1, 6, 11

*Tovar v. Hosp. Housekeeping Sys., Inc.*,
  No. 09-cv-03487, 2009 WL 10672526 (C.D. Cal. Nov. 2, 2009) ......................................... 6, 7

*TravelPass Grp., LLC v. Benjamin & Bros., LLC*,
  No. 2:17-cv-00247, 2017 WL 2841221 (D. Utah July 3, 2017) ............................................... 7

*Vance v. Google*,
  No. 5:20-cv-04696, 2021 WL 534363 (N.D. Cal. Feb. 12, 2021) .................................. *passim*

*ZeniMax Media Inc. v. Samsung Elecs. Co.*,
  No. 3:17-cv-1288, 2017 WL 4805524 (N.D. Tex. Oct. 25, 2017) ..................................... 7, 12

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

If this case is not dismissed in its entirety for the reasons set forth in the Motion to Dismiss filed today, this case should be stayed pending resolution of the closely related HATCI Matter that Soelect filed nearly two years ago against HATCI, an HMC subsidiary, in the Northern District of Illinois.  *See Soelect, Inc. v. Hyundai America Technical Center, Inc.*, No. 1:22-cv-01342 (N.D. Ill.).

In the HATCI Matter, Soelect asserts that HATCI breached a Materials Transfer and Test Agreement (the "MTA") between HATCI and Soelect.  To support that claim, Soelect alleges that (a) Soelect shipped samples of an allegedly proprietary battery anode material, which it calls "Lithium-X" or "LiX," to HMC in South Korea in August 2020 and (b) HMC took scanning electron microscopy ("SEM") images of one of those samples.  Soelect contends that this SEM imaging revealed proprietary information about the LiX product and thereby breached the MTA. In the present case against HMC, Soelect includes essentially the same factual allegations—that it shipped its samples to HMC, which learned proprietary information about the LiX product through SEM imaging—though this time brings a claim against HMC under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq.  Soelect seeks damages in both cases based on such testing.

Given the substantial factual overlap in the cases and the advanced state of the HATCI Matter, it makes no practical sense for this Court to proceed now to adjudicate Soelect's DTSA claim against HMC while the Northern District of Illinois simultaneously adjudicates Soelect's breach of contract claim against HATCI.  In fact, every *Landis* factor strongly favors ordering a stay.  *See SolarPark Korea Co. v. Solaria Corp.*, No. 23-cv-01181, 2023 WL 4983159, at *15-17 (N.D. Cal. Aug. 2, 2023) (listing the "*Landis* factors" from *Landis v. North American Co.*, 299 U.S. 248 (1936)).

*First*, a stay will not damage Soelect.  The HATCI Matter "will be concluded within a reasonable time in relation to the urgency of" Soelect's DTSA claim.  *SST Millennium LLC v. Mission St. Dev. LLC*, No. 18-cv-06681, 2019 WL 2342277, at *4 (N.D. Cal. June 3, 2019) (staying

1  case).[1]  In the HATCI Matter, the parties have completed fact and expert discovery and fully briefed their respective cross-motions for summary judgment.  This case, in contrast, is in its infancy.  And there is no urgency here: Soelect filed this suit just one week before the three-year statute of limitations ran on its DTSA claim; it sought a tolling agreement from HMC before filing suit, which would have further delayed adjudication of that claim; and it has not sought, or even raised the prospect of a motion for, preliminary injunctive relief.  Further, it is not enough for Soelect to complain of "generalized risk[s] of delayed litigation," as it did when the parties conferred about HMC filing this stay motion.  *Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d 933, 938 (N.D. Cal. 2015) (staying case).  Rather, Soelect must demonstrate with "specific supporting evidence" that harm will result from this case's deferral.  *Id.*

*Second*, the parties will likely suffer hardship if the requested stay is denied because "proceeding with th[is] litigation would require both parties to expend significant resources litigating" Soelect's DTSA claim here when such effort might be unnecessary or substantially narrowed following the adjudication of the first-filed HATCI Matter.  *SolarPark*, 2023 WL 4983159, at *16.  Moreover, allowing both cases to proceed simultaneously would create the risk of "inconsistent rulings."  *Id.*; *Vance v. Google*, No. 5:20-cv-04696, 2021 WL 534363, at *6 (N.D. Cal. Feb. 12, 2021) (granting stay where "parallel proceedings" risked "inconsistent and confusing outcomes").

*Third*, because "the issues to be resolved in this case and in the [HATCI Matter] contain" multiple "overlapping facts and issues," a stay will avoid unnecessary, duplicative litigation and thus serve judicial economy and "promote[] the orderly course of justice."  *SolarPark*, 2023 WL 4983159, at *16-17 (staying trade secret claims in light of arbitration over contract claims "bear[ing] upon the case"); *Aliphcom*, 154 F. Supp. 3d at 939.

## II.  BACKGROUND

HMC has been developing and evaluating next-generation battery technologies, including lithium metal anodes, for well over a decade.  *See* Ex. A,[2] HATCI Matter, Dkt. 124-9 (Dec. 15

---

[1] Unless otherwise noted, internal quotations and citations are omitted, and emphasis is added.
[2] Lettered exhibits are attached to the accompanying Declaration of Melanie J. Grindle ("Grindle Decl."), unless otherwise noted.

1   Song Decl.) at ¶ 2.  In the course of that work, HMC has at times assessed third-party technologies.

2   *Id.* at ¶¶ 2-4.  Soelect's claims against HATCI and HMC asserted in Illinois and California,

3   respectively, relate to HMC's assessment activity.

4           In September 2019, HATCI and Soelect entered the MTA, in which Soelect agreed to send

5   12 specifically-identified sample sheets of lithium alloy materials to HMC, in South Korea, during

6   a three-month project period at the end of 2019.  Dkt. 1 at ¶ 29; Dkt. 1-2 at 2, 4-5.  Soelect shipped

7   those samples to HMC, and HMC evaluated them.  *See* Dkt. 1 at ¶¶ 32-33.  HMC's evaluation

8   revealed that Soelect's LiX product was inconsistent and inferior to anode materials HMC was

9   already using.  *See* Ex. A, HATCI Matter, Dkt. 124-9 (Dec. 15 Song Decl.) at ¶¶ 4-5, 7, 10; Ex. B,

10  HATCI Matter, Dkt. 146-2 (Jan. 29 Song Decl.) at ¶¶ 4, 16.

11          In August 2020—more than six months after the MTA's project period ended—Soelect

12  sent HMC samples of a "new" LiX anode that was different from the anode Soelect had shipped

13  under the MTA.[3]  HMC evaluated these new samples, which Soelect calls its "Gen-2" samples,

14  and found that they also failed to meet HMC's expectations and standards and did not perform

15  better than existing material HMC had developed.  *See* Ex. A, HATCI Matter, Dkt. 124-9 (Dec.

16  15 Song Decl.) at ¶¶ 6-7, 10.  In September 2020, HMC took SEM images of lithium deposits from

17  HMC's cathode that accumulated on top of one of Soelect's new product samples after a charging

18  cycle.  *Id.* at ¶ 6.  HMC provided Soelect these images to give Soelect more information about

19  how its sample reacted with HMC's material.  *Id.*  These SEM images and Soelect's alleged

20  damages arising from the taking of the SEM images are at the heart of Soelect's claims in both the

21  HATCI Matter and this case.  *Compare* Dkt. 1 at ¶¶ 2, 11 *with* HATCI Matter, Dkt. 136 (Soelect

22  SJ Reply) at 4-5, 11-12.

23          On March 14, 2022, Soelect filed a one-count complaint in the Northern District of Illinois

24  against HATCI, alleging HATCI breached the MTA through HMC's SEM imaging of the lithium

25

---

26  [3] *See* Ex. C, HATCI Matter, Dkt. 146-3 (Jan. 29 Seo Decl.) at ¶¶ 6-10, 15, Ex. B (Apr. 10, 2020 messages) (Dr. Seo: "Oh, is this a completely different concept from the initial sample you
27  previously sent?" Dr. Cho of Soelect: "I found *something new*."); Ex. B, HATCI Matter, Dkt. 146-2 (Jan. 29 Song Decl.) at ¶ 17 ("[HMC] viewed th[e] [August 2020] samples … as new Soelect
28  products and [HMC]'s evaluation of those samples as a new project.").

deposits on the top of one of Soelect's August 2020 samples. *See* Ex. D, HATCI Matter, Dkt. 1 (Compl.) at ¶¶ 1, 7-15. Soelect contends the SEM imaging revealed proprietary information about its LiX product. *Id.* at ¶¶ 11-15, 20; HATCI Matter, Dkt. 136 (Soelect SJ Reply) at 4-5, 11-12. During fact discovery in the HATCI Matter, the parties exchanged hundreds of documents (thousands of pages) and took more than 15 depositions, including of HATCI and Soelect witnesses who would have to be deposed in this case. *See* Grindle Decl. at ¶ 9. HMC, which is not a defendant in the HATCI Matter, also voluntarily produced documents in that case. *See, e.g.*, HATCI Matter, Dkt. 75 at ¶ 2 (Soelect summarizing "Documents Provided by HMC"). Fact discovery in the HATCI Matter closed in July 2023, subject to an agreement to take a limited number of depositions outside of that fact discovery period. HATCI Matter, Dkt. 97.

At the end of 2023, Soelect and HATCI filed cross-motions for summary judgment in the HATCI Matter. Soelect moved for summary judgment that "HATCI breached the MTA by allowing an entity that it used to conduct testing on HATCI's behalf [i.e., HMC] to test Soelect's proprietary Lithium-X product in a manner prohibited by the MTA [i.e., through SEM]." HATCI Matter, Dkt. 106 (Soelect SJ Motion) at 2. HATCI cross-moved for summary judgment that there was no breach because, among other reasons, Soelect's August 2020 samples and HMC's SEM imaging of the lithium deposits on the top of one such sample were not covered by the MTA, and the SEM images did not reveal any confidential characteristics of Soelect's sample. HATCI Matter, Dkt. 145 (HATCI SJ Reply) at 1-5, 7-8; *see also* HATCI Matter, Dkt. 119, 123. HMC engineers explained the limited scope of their testing and averred that "HMC has never used any information from any evaluations of Soelect samples in any projects or development work." Ex. B, HATCI Matter, Dkt. 146-2 (Jan. 29 Song Decl.) at ¶¶ 6-9; Ex. C, HATCI Matter, Dkt. 146-3 (Jan. 29 Seo Decl.) at ¶¶ 13-14. The parties' cross-motions for summary judgment also sought judgment regarding Soelect's claims for damages stemming from the alleged breach. Specifically, Soelect contended that HMC should be required to pay $10 million in damages based on a quasi-liquidated damages provision in the MTA, which sets a floor for damages that Soelect can recover in the event of a wide range of breaches of three sections in the MTA. HATCI Matter, Dkt. 107 (Soelect SJ Mem.) at 1. HATCI, in turn, moved to have the Court find that provision in the MTA

to be an unenforceable penalty under applicable North Carolina law. HATCI Matter, Dkt. 123 (HATCI SJ Mem.) at 14-21, 23-25; HATCI Matter, Dkt. 145 (HATCI SJ Reply) at 9-13. The parties' cross-motions are fully briefed and pending.

Soelect filed its complaint in this case on October 20, 2023, over a year and a half after it filed the HATCI Matter. Dkt. 1. With factual allegations closely mirroring those in the HATCI Matter, Soelect claims that HMC misappropriated LiX-related trade secrets in violation of the DTSA. *See, e.g.*, Dkt. 1 at ¶¶ 1, 6 (alleging HMC obtained samples of Soelect's "'Lithium-X' or 'LiX' anode material" pursuant to the MTA), ¶¶ 10-11 (alleging HMC "sent Soelect testing results" showing HMC had conducted "testing prohibited by the [MTA]" "capable of determining the structure and composition [of] Soelect's technology"). On January 8, 2024, HMC waived service and agreed to file responsive pleadings on March 8, 2024. Dkt. 11.

Concurrent with this motion to stay, HMC moves to dismiss this case. No discovery has been taken here, and no case schedule has been set.

## III. LEGAL STANDARDS

A court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings" that "bear upon" the action. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "'This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.'" *SolarPark*, 2023 WL 4983159, at *15 (quoting *Leyva*, 593 F.2d at 863-64); *see also Murillo v. Target Corp.*, No. 23-cv-03033, 2023 WL 4553597, at *13 (C.D. Cal. July 14, 2023) ("[I]t is substantial similarity, not identicality, that matters"). Nor must the separate proceedings involve identical parties. *See Vance*, 2021 WL 534363, at *6-7 (staying case filed against Google in this District in view of separate suit filed against IBM in the Northern District of Illinois); *Regal W. Corp. v. Neeves*, No. 2:22-cv-01653, 2022 WL 9467966, at *6 (D.S.C. Oct. 14, 2022) ("[A] District Court 'may [ ] stay[ ] [a case] to abide the proceedings in another' even if the parties to the two causes … are not identical.") (quoting *Landis*, 299 U.S. at 254)).

"In determining whether to grant a stay under its inherent authority," this Court weighs three *Landis* factors: "(1) the possible damages from granting a stay; (2) the hardship or inequity to a party if required to litigate; and (3) how a stay would affect the orderly course of justice, including whether a stay will simplify or complicate issues in the pending litigation." *SolarPark*, 2023 WL 4983159, at *15 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) and citing *Landis*, 299 U.S. at 268).

## IV. THIS CASE SHOULD BE STAYED PENDING RESOLUTION OF THE HATCI MATTER BASED ON THE *LANDIS* FACTORS

### A. Staying This Case Will Not Damage Soelect

Staying this case will not damage Soelect, as the HATCI Matter "will be concluded within a reasonable time in relation to the urgency of" Soelect's DTSA claim. *SST Millennium*, 2019 WL 2342277, at *4.

The HATCI Matter was filed nearly two years ago. Ex. D, HATCI Matter, Dkt. 1 (Compl.). Discovery is closed in that case, and cross-motions for summary judgment are fully briefed and pending. *See* Section II. In the Northern District of Illinois, the average time to trial in contract cases, like the HATCI Matter, is less three years. *See* Grindle Decl. at ¶ 6, Ex. E. Thus, the HATCI Matter can reasonably be expected to reach trial within about a year, if it is not resolved sooner by the parties' pending cross-motions for summary judgment. This case, in contrast, is in its infancy. HMC concurrently moves to dismiss Soelect's complaint, discovery has not begun, and no case schedule has been set. This early procedural posture "weigh[s] against a finding of prejudice" or damage to Soelect from a stay. *Tovar v. Hosp. Housekeeping Sys., Inc.*, No. 09-cv-03487, 2009 WL 10672526, at *4 (C.D. Cal. Nov. 2, 2009) (staying case: "the action is in its early stages; no trial date has been set, and neither party has commenced discovery."); *see also Aliphcom*, 154 F. Supp. 3d at 939-40 (similar).

Further, there is no urgency here. Soelect waited to file this suit until October 20, 2023, just one week before the three-year statute of limitations ran on its DTSA claim. *See* Dkt. 1 at ¶¶ 37-38 (Soelect alleging it learned of HMC's purported misappropriation on October 27, 2020, when HMC sent Soelect SEM images); 18 U.S.C. § 1836(d) (3-year statute of limitations). This

lack of urgency favors a stay. *See ZeniMax Media Inc. v. Samsung Elecs. Co.*, No. 3:17-cv-1288, 2017 WL 4805524, at *5 (N.D. Tex. Oct. 25, 2017) (staying action where plaintiff "already delayed any relief by waiting so long to sue"); *Regal W. Corp.*, 2022 WL 9467966, at *6 (finding a plaintiff's "lack of diligence in pursuing its claims" "minimize[d] any prejudice that might result from" a stay).[4] Additionally, before this suit was filed, Soelect proposed a tolling agreement to HMC that would have further delayed the adjudication of Soelect's DTSA claim.[5] And Soelect has not sought, or even raised the prospect of a motion for, preliminary injunctive relief. *See TravelPass Grp., LLC v. Benjamin & Bros., LLC*, No. 2:17-cv-00247, 2017 WL 2841221, at *3 (D. Utah July 3, 2017) (granting motion to stay: "If ongoing misappropriation of [Plaintiff]'s trade secrets was of imminent concern, [Plaintiff] would have immediately sought injunctive relief."); *Aircraft Inv. Res., LLC v. Gulf Aircraft Maint. Co.*, No. 05-cv-6373, 2006 WL 8459699, at *4 (D. Or. Apr. 26, 2006) (finding plaintiff's asserted concern that "if a stay is granted, defendants will be able to continue to use and share plaintiff's intellectual property" "disingenuous in light of plaintiff's failure to … seek preliminary injunctive relief"); *see also Vance*, 2021 WL 534363, at *4 (agreeing that "a party's prayer for an injunction does not preclude a court from issuing a stay").

Also, it is not enough for Soelect to complain of "generalized risk[s] of delayed litigation," as it did during the parties' meet and confer about staying this case. *Aliphcom*, 154 F. Supp. 3d at 938; *see also Tovar*, 2009 WL 10672526, at *4 ("delay in recovering potential monetary damages is not sufficient harm to warrant a stay"). Rather, Soelect must show with "specific supporting evidence" that harm will result from a stay. *Aliphcom*, 154 F. Supp. 3d at 938.

---

[4] Soelect's complaint also discusses an October 4, 2023 Korean newspaper article, alleging that it revealed HMC's use of Soelect's technology. *See* Dkt. 1 at ¶¶ 3, 13-14, 46; Dkt. 1-4. The article reveals no such thing and has since been clarified to eliminate any reference to Soelect. In any event, Soelect's speculation should be disregarded. The crux of Soelect's complaint remains HMC's SEM imaging of the lithium deposits on one of Soelect's samples after charge cycling, which Soelect alleges it learned of in October 2020. *See* Dkt. 1 at ¶¶ 1, 2, 10-11, 37-38, 56; *see also* 18 U.S.C. §1836(d) ("[A] continuing misappropriation constitutes a single claim."). HMC has provided substantial additional assurances that it is not using any of its technology and, even if it were, such use would be addressed in the HATCI Matter.

[5] *See* Grindle Decl. ¶ 7, Ex. F, Soelect's Proposed Tolling Agreement, Recitals, §§ 1, 4 (Soelect was "willing to delay the filing of a lawsuit" "against HMC" "for a period of time that runs initially from October 4, 2023, and ends 60 days after the termination of th[e] Tolling Agreement," where termination would be triggered only by Soelect's or HMC's written notice.).

For these reasons, a stay will not damage Soelect, and the first *Landis* factor favors a stay.

### B. The Parties Will Likely Suffer Hardship Absent A Stay

The parties will likely suffer hardship if the requested stay is denied because they will be forced to litigate two actions risking "inconsistent rulings." *SolarPark*, 2023 WL 4983159, at *16; *Vance*, 2021 WL 534363, at *6 (ruling the "hardship to [defendant] weigh[ed] in favor of granting [a] stay" where the "parallel proceedings could create inconsistent and confusing outcomes").

For example, in the HATCI Matter, Soelect and HATCI have cross-moved for summary judgment on issues relating to whether the MTA applies to the LiX samples Soelect sent HMC in August 2020 and HMC's SEM imaging of the lithium deposits on top of one such sample, and whether that SEM imaging revealed confidential information. *See* HATCI Matter, Dkt. 123 (HATCI SJ Mem.) at 2, 21-23; HATCI Matter, Dkt. 136 (Soelect SJ Reply) at 8-12; HATCI Matter, Dkt. 145 (HATCI SJ Reply) at 1-8. Rulings on these issues—e.g., determinations that the MTA does *not* apply to the August 2020 samples or HMC's SEM imaging, or that the SEM imaging did *not* reveal Soelect's proprietary information—could impact and narrow issues this Court needs to address, issues on which this Court and the Northern District of Illinois should not make inconsistent rulings. *See* 18 U.S.C. § 1839 (requiring a DTSA plaintiff to prove its trade secrets were acquired through "improper means," for example, where a defendant had "a duty to maintain [the] secrecy" of same); *see also See Vance*, 2021 WL 534363, at *6 (granting stay: "By allowing the Illinois court to resolve some of these overlapping issues," "the Court avoids issuing inconsistent rulings.").

As another example, in the HATCI Matter, Soelect and HATCI dispute whether Soelect's samples underperformed or were superior to materials already available to, and being used by, HMC. *Compare* HATCI Matter, Dkt. 136 (Soelect SJ Reply) at 4 (Soelect arguing that its "Lithium-X material did not perform negatively" and "outperformed HMC's control sample") *with* Ex. B, HATCI Matter, Dkt. 146-2 (Jan. 29 Song Decl.) at ¶ 4 ("[HMC]'s evaluations of Soelect's samples were inconclusive or showed that those samples performed poorly or below HMC's expectations and standards."), ¶ 16 ("[HMC]'s testing does not support Soelect's position that its LiX samples were superior to the materials HMC was already using."). A finding on this issue in

the HATCI Matter—e.g., a finding that Soelect's product samples underperformed, as HATCI has shown—could impact and narrow issues on which this Court and the Northern District of Illinois should not make inconsistent rulings. *See* 18 U.S.C. § 1839(3)(B) (requiring a DTSA plaintiff to prove that its "information" derives "independent economic value" for the information to qualify as a trade secret); Dkt. 1 at ¶ 53 (Soelect alleging that its purported trade secret technology has independent economic value "because it improves the performance of lithium metal batteries"); *see also FormFactor, Inc. v. Micronics Japan Co.*, No. 06-cv-07159, 2008 WL 361128, at *3 (N.D. Cal. Feb. 11, 2008) (ruling that a stay would be the "most efficient," "fairest," and the "most prudential course of action" where it was "likely that the issues [to be] resolved in [a first proceeding] w[ould] bear upon the highly technical … questions which [we]re likely to arise in" the second proceeding).

As a further example, in the HATCI Matter, Soelect and HATCI dispute whether Soelect maintained the confidentiality of its samples and their characteristics, or disclosed samples without proper protections, e.g., without adequate safeguards against reverse engineering. *See* HATCI Matter, Dkt. 136 (Soelect SJ Reply) at 22 n.12 (Soelect concedes it "entered into NDAs that did not specifically prohibit reverse engineering," but argues the companies with which it entered such agreements were not "provided [] comprehensive testing materials."). A finding on this issue in the HATCI Matter—e.g., a finding that Soelect failed to protect the confidentiality of its allegedly proprietary information—could impact and narrow issues on which this Court and the Northern District of Illinois should not make inconsistent rulings. *See* 18 U.S.C. § 1839(3)(A) (requiring a DTSA plaintiff to prove that it took "reasonable measures to keep [its alleged trade secret] information secret"); Dkt. 1 at ¶¶ 22-24 (Soelect alleging it took such steps).

As yet another example, a determination in the HATCI Matter that Soelect was not harmed by HMC's testing of the August 2020 samples could impact and narrow this Court's evaluation under the DTSA of Soelect's harm (if any). And this is particularly important because Soelect's CFO conceded in the HATCI Matter that Soelect was not harmed by HMC's testing. *See* Ex. G, HATCI Matter, Dkt. 124-7 (Soelect's CFO's Dep. Tr.) at 74:7-11 ("Q. … Are you aware of any harm to Soelect caused by Hyundai Motor Company's evaluation of the samples that it received

from Soelect? A. *No.*"). Moreover, in the HATCI Matter, Soelect is demanding $10 million based on a liquidated damages provision and Soelect's purported loss of the value of its LiX technology or HATCI's receipt of that value through HMC's testing. Whatever Soelect recovers in the HATCI Matter (be it no damages or $10 million) will substantially impact any damages theory or potential award here against HMC, and there is a significant risk of double recovery for Soelect if these cases proceed in parallel.

In addition to risking inconsistent rulings and confusing outcomes, "proceeding with th[is] litigation would require both parties to expend significant resources litigating" Soelect's DTSA claim. *SolarPark*, 2023 WL 4983159, at *16. And this is true even though HMC is not a named defendant in the HATCI Matter, and HATCI is not a named defendant here, including because this case will require discovery that is "duplicative" of what has already been completed in the HATCI Matter, e.g., the production of the same documents that were produced in the HATCI Matter relating to Soelect's interactions with HATCI and HMC, as well as depositions of Soelect and HATCI witnesses who were already deposed. *See id.* (granting stay even though plaintiff asserted claims against defendants not involved in parallel proceeding); *Vance*, 2021 WL 534363, at *5-7 (staying case filed against Google in this District in view of separate suit filed against IBM in the Northern District of Illinois); *Regal W. Corp.*, 2022 WL 9467966, at *5 ("While [Defendant] is not a party to the California Action and … he will not face ongoing costs in that action, … [his] legal costs incurred in this action are entirely relevant if the action needlessly proceeds."); *FormFactor*, 2008 WL 361128, at *3 (recognizing that "duplicative" discovery results in hardship); *Vance*, 2021 WL 534363, at *5 (granting stay where "significant discovery … could be rendered moot by the [other] action"); *see also* Section II (discussing HATCI Matter discovery).

For these reasons, the second *Landis* factor favors a stay.

### C.     A Stay Will Promote Judicial Economy and the Orderly Course of Justice

A stay will avoid unnecessary, duplicative litigation, protect judicial economy, and "promote[] the orderly course of justice" because this case and the HATCI Matter involve multiple "overlapping facts and issues." *SolarPark*, 2023 WL 4983159, at *16-17; *see also Aliphcom*, 154 F. Supp. 3d at 939.

As noted, multiple overlapping issues in this case and the HATCI Matter favor a stay because a denial of the requested stay could lead to inconsistent rulings and resulting hardship. *See* Section IV.B. Those overlapping issues also favor a stay because rulings on them in the HATCI Matter will simplify, if not completely resolve, key issues here. *See SolarPark*, 2023 WL 4983159, at *15 (courts considering "the orderly course of justice," the third *Landis* factor, assess "whether a stay will simplify or complicate issues in the pending litigation"). Rulings in the HATCI Matter will bear on, and likely simplify HMC's and Soelect's disputes over, at least these issues in this action: (i) whether HMC owed Soelect an obligation to keep confidential information about Soelect's August 2020 samples, including pursuant to the MTA; (ii) whether HMC's SEM imaging of the lithium deposits on top of one Soelect sample revealed any such confidential information; (iii) whether Soelect's samples were inferior to or an improvement over materials already available to HMC; (iv) whether Soelect failed to protect the confidentiality of its samples and their allegedly proprietary characteristics; (v) whether Soelect suffered any harm as a result of the conduct about which it complains; and (vi) what damages, if any, Soelect could recover based on such conduct. *See id.*; *see also Aircraft Inv. Res.*, 2006 WL 8459699, at *4 (staying case where misappropriation claims "depend[ed] largely on a determination of … contractual rights" being assessed in a separate arbitration); *Invista S.À R.L. v. E.I. du Pont de Nemours & Co.*, No. 08-cv-7270, 2010 WL 11712412, at *6 (S.D.N.Y. Mar. 31, 2010) (similar). By allowing the Northern District of Illinois to first "resolve some of these overlapping issues, significant efficiencies [will be] gained" and this Court will "avoid[] … expending unnecessary judicial resources." *Vance*, 2021 WL 534363, at *6.

Furthermore, it is no surprise that there are multiple, significant overlapping issues in this case and the HATCI Matter. Both cases arise out of the same nucleus of facts—so much so that allowing this case to proceed would just result in "unnecessary duplicative litigation." *SST Millennium*, 2019 WL 2342277, at *5 ("In determining whether a stay promotes the orderly course of justice, courts may consider the degree of overlap in factual allegations between parallel cases

in order to avoid unnecessary duplicative litigation.").[6] Soelect's DTSA claim here and its breach of contract claim in the HATCI Matter are founded on the same allegedly improper conduct—HMC's testing of LiX samples that Soelect shipped to HMC in South Korea in August 2020. In the HATCI Matter, Soelect alleges that HATCI breached the MTA based on HMC's testing. Ex. D, HATCI Matter, Dkt. 1 (Compl.) at ¶¶ 1, 15. Here, Soelect alleges that HMC's testing constitutes trade secret misappropriation under the DTSA. Dkt. 1 at ¶¶ 37-39, 58. And the alleged facts that, according to Soelect led to HMC's purportedly wrongful testing likewise are, or are substantively, the same. *Compare, e.g.*, Ex. D, HATCI Matter, Dkt. 1 (Compl.) at ¶¶ 6-8, 10-15 *with* Dkt. 1 at ¶¶ 20, 29-30, 37-39. This factual overlap also favors a stay. *See SolarPark*, 2023 WL 4983159, at *17 (staying misappropriation claim pending arbitration regarding related contract issues); *Invista*, 2010 WL 11712412, at *6-8 (similar); *ZeniMax*, 2017 WL 4805524, at *4 (staying misappropriation claims against Samsung that were "predicated on Oculus' illegal misappropriation" because Oculus' alleged misconduct "ha[d] not yet been finally resolved in" a separate case).

In the HATCI Matter, HATCI moved for summary judgment because the record, including HMC's engineers' sworn declarations, refutes Soelect's claims relating to the MTA and to HATCI's and HMC's interactions with Soelect and its LiX products. *See* HATCI Matter, Dkt. 123 (HATCI SJ Mem.); *see also, e.g.*, Ex. B, HATCI Matter, Dkt. 146-2 (Jan. 29 Song Decl.) at ¶ 8 ("HMC has never used any information from any evaluations of Soelect samples in any projects or development work."), ¶ 9 ("We do not have, and never had or reverse engineered, any information concerning the confidential composition, structure, or behavior of any of the samples Soelect provided other than what Soelect has voluntarily provided to us."); Ex. C, HATCI Matter, Dkt. 146-3 (Jan. 29 Seo Decl.) at ¶¶ 13-14 (similar). This Court should not give Soelect "another untimely bite at the apple." *Regal W. Corp.*, 2022 WL 9467966, at *6 (granting stay). Rather, this Court should stay this case until the HATCI Matter, with its multiple "overlapping facts and

---

[6] This is why HMC concurrently moves to dismiss Soelect's DTSA claim under the anti-claim splitting doctrine. *See* HMC's Motion to Dismiss at § VI. If Soelect's claim is not dismissed under the anti-claim splitting doctrine, that doctrine, like the *Landis* factors, dictates that it be stayed. *See id.*; *Anguiano-Tamayo v. Wal-Mart*, No. 18-cv-04598, 2019 WL 359417, at *8 (N.D. Cal. Jan. 29, 2019) (staying suit under the anti-claim splitting doctrine).

issues," concludes. *SolarPark*, 2023 WL 4983159, at *16-17; *Aliphcom*, 154 F. Supp. 3d at 939. Doing so will protect judicial economy and promote the orderly course of justice. The third *Landis* factor thus favors a stay.

## V. CONCLUSION

For the foregoing reasons, if the Court were to deny HMC's Motion to Dismiss, this case should be stayed pending resolution of the HATCI Matter.[7]

---

[7] If this case is stayed, HMC submits that the Court could order the parties to submit status reports on the HATCI Matter, at intervals that are convenient for the Court, and within two weeks of a final decision in the HATCI Matter.

| | | |
|---|---|---|
| 1 | Dated: March 8, 2024 | Respectfully submitted, |
| 2 | | LATHAM & WATKINS LLP |
| 3 | | By: /s/ Matthew W. Walch |

        Matthew W. Walch (*Pro Hac Vice*)
         matthew.walch@lw.com
        Gary S. Feinerman (*Pro Hac Vice*)
         gary.feinerman@lw.com
        330 North Wabash Avenue, Suite 2800
        Chicago, Illinois 60611
        Telephone: (312) 876-7700

        Douglas E. Lumish (SBN 183863)
         doug.lumish@lw.com
        140 Scott Drive
        Menlo Park, California 94025
        Telephone: (650) 328-4600

        Christopher W. Henry (*Pro Hac Vice*)
         christopher.henry@lw.com
        200 Clarendon Street
        Boston, Massachusetts 02116
        Telephone: (617) 948-6000

        Melanie J. Grindle (SBN 311047)
         melanie.grindle@lw.com
        12670 High Bluff Drive
        San Diego, California 94025
        Telephone: (858) 523-5400

*Attorneys for Defendant Hyundai Motor Company*