1 | BAILEY & GLASSER, LLP
Todd A. Walburg (State Bar No. 213063)
2 |  *twalburg@baileyglasser.com*
1999 Harrison Street, Suite 660
3 | Oakland, CA 94612
Telephone: (510) 272-8000
4 | Facsimile: (510) 463-0291

5 | Benjamin L. Bailey (*to be admitted pro hac vice*)
 *bbailey@baileyglasser.com*
6 | Eric B. Snyder (*to be admitted pro hac vice*)
 *esnyder@baileyglasser.com*
7 | Christopher D. Smith (*to be admitted pro hac vice*)
 *csmith@baileyglasser.com*
8 | 209 Capitol Street
Charleston, WV 25301
9 | Telephone: (304) 345-6555
Facsimile: (304) 342-1110
10

*Attorneys for Plaintiff Soelect, Inc.*

[*Additional counsel on signature page*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOELECT, INC., | CASE NO. 3:23-cv-5405-CRB |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT HYUNDAI MOTOR COMPANY'S MOTION TO DISMISS** |
| vs. | |
| HYUNDAI MOTOR COMPANY, | |
| Defendant. | Judge: Hon. Charles R. Breyer |
| | Courtroom: 6 – 17th Floor |
| | Date: May 3, 2024 |
| | Time: 11:30 a.m. |

**TABLE OF CONTENTS**

1. INTRODUCTION ...................................................................................................................1

2. KEY FACTS..........................................................................................................................2

3. LEGAL STANDARD.............................................................................................................3

4. THIS COURT CAN EXERCISE PERSONAL JURISDICTION OVER HMC.................3

    a. By the admission of its own subsidiary, HMC "purposefully directed" activities in California.................................................................................................4

    b. Soelect's DTSA Claim Arises out of HMC's Forum-Related Activities. ...............7

    c. Exercising Personal Jurisdiction over HMC in a forum where it directs the business activities of its subsidiary is eminently reasonable. .................................8

    d. At the minimum, Soelect is entitled to jurisdictional discovery. ............................9

5. VENUE IS PROPER IN THIS DISTRICT. ........................................................................9

6. SOELECT DID NOT ENGAGE IN CLAIM SPLITTING BECAUSE THE TWO LAWSUITS INVOLVE DIFFERENT CAUSES OF ACTION AND HATCI AND HMC ARE NOT IN PRIVITY................................................................................10

    e. The Illinois case and this case involve different facts, causes of action, operative evidence, and evidence. ........................................................................10

    f. HATCI and HMC are different parties, not in privity. ..........................................12

7. SOELECT ALLEGED DOMESTIC ACTS IN FURTHERANCE OF HMC'S DTSA VIOLATION. ............................................................................................................12

CONCLUSION ..........................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ...........................................................................................3, 9

*Brayton Purcell LLP v. Recordon & Recordon*,
    606 F.3d 1124 (9th Cir.2010) ..................................................................................................4

*Caruth v. Int'l Psychoanalytical Ass'n*,
    59 F.3d 126 (9th Cir. 1995) .....................................................................................................3

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..............................................................................................................4, 5

*DFSB Kollective Co. v. Bourne*,
    897 F. Supp. 2d 871 (N.D. Cal. 2012) .....................................................................................7

*E*Healthline.com, Inc. v. Pharmaniaga Berhad*,
    No. 218CV01069MCEEFB, 2018 WL 5296291 (E.D. Cal. Oct. 23, 2018)..........................6, 7

*Genasys Inc. v. Vector Acoustics, LLC*,
    638 F. Supp. 3d 1135 (S.D. Cal. 2022)...................................................................................11

*GeoSolutions B.V. v. Sina.com Online*,
    No. 21-CV-08019-PCP, 2023 WL 7107284 (N.D. Cal. Oct. 27, 2023) ...................................8

*Hit Bound Music, Ltd. v. BBC Films*,
    No. 216CV7125CBMKSX, 2017 WL 5640543 (C.D. Cal. June 28, 2017) ............................6

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.*,
    No. 21-MD-02996, 2023 WL 4670291 (N.D. Cal. July 20, 2023)..........................................3

*Medcenter Holdings Inc. v. WebMD Health Corp.*,
    No. 1:20-CV-00053 (ALC), 2021 WL 1178129 (S.D.N.Y. Mar. 29, 2021) .........................13

*Mendoza v. Amalgamated Transit Union Int'l*,
    30 F.4th 879 (9th Cir. 2022) .............................................................................................10, 12

*Motivo Eng'g, LLC v. Black Gold Farms*,
    No. 222CV01447CASJCX, 2022 WL 4587127 (C.D. Cal. Sept. 28, 2022) .........................11

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) .................................................................................................4

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................................................ *passim*

*Serenium, Inc. v. Zhou*,
    No. 20-CV-02132-BLF, 2021 WL 3111758 (N.D. Cal. July 22, 2021) ................................... 6

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ............................................................................................. 3

*Uffner v. La Reunion Francaise, S.A.*,
    244 F.3d 38 (1st Cir.2001) .................................................................................................. 9

*WFC Lynnwood I LLC v. Lee of Raleigh, Inc.*,
    817 S.E.2d 437 (N.C. App. 2018) ...................................................................................... 10

**Statutes**

18 U.S.C. 1836 ............................................................................................................................ 11

18 USC 1939(5)(B)(ii)(II) ............................................................................................................ 12

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(3) ........................................................................................................... 3

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................................... 3

*US BEV Market*, CleanTechnica, https://cleantechnica.com/2024/02/22/california-
    rises-to-21-4-bev-market-share-33-8-of-us-bev-
    market/#:~:text=In%20fact%2C%2033.8%25%20of%20US,from%20below%
    2010%25%20in%202021 (last visited Mar. 21, 2024) ........................................................ 7

1. **INTRODUCTION**

In 2019, Hyundai America Technical Center, Inc.'s CRADLE office, which operates in Santa Clara County, California, negotiated a contract under which Soelect, Inc. agreed to send its proprietary lithium metal battery materials to Hyundai Motor Company in South Korea. Soelect alleges that Hyundai Motor Company then performed improper testing and stole those materials. Hyundai Motor Company asserts that three independent grounds (personal jurisdiction, venue, and lack of domestic act in furtherance) that it claims warrants dismissal of this claim on the basis that Soelect, Inc. failed to allege relevant conduct by Hyundai Motor Company in the Northern District of California. It fails to mention that the CRADLE office of Hyundai America Technical Center is no mere subsidiary of Hyundai Motor Company; instead, Hyundai America Technical Center, Inc. admitted that "[Hyundai Motor Company], not HATCI, directs Hyundai CRADLE's projects and business activities." HATCI Aff., attached hereto as Exhibit A. The ties to this forum are therefore simple: Hyundai Motor Company acquired—and then allegedly stole—Soelect's proprietary materials under the auspices of a contract that was negotiated by an HMC controlled California-based office.

That same contract between HATCI and Soelect shows why this case is not improperly split from Soelect's breach of contract case pending in the Northern District of Illinois against HATCI. First, the two cases are different. In the Illinois case, damages are liquidated, and the breach happened as soon as the prohibited testing occurred. As much as HATCI wants to argue in Illinois (as HMC argues here) that it is not liable because, it says, HMC never used Soelect's intellectual property, that issue is irrelevant in Illinois. Likewise, the proof necessary to establish a DTSA violation and damages for that violation in this case is not required in Illinois. Damages there are liquidated, and it is HATCI's burden, not Soelect's, to prove the liquidated amount is unreasonable. At best, the overlap between the two cases is small and will likely focus on the issue of whether a contract signed by the President, Vice President, and General Counsel of HATCI means what it says. Second, HMC and HATCI are not in privity. HMC did not participate in the Illinois case, and its interests are not the same as HATCI's. Instead, it avoided participating until

it produced self-serving declarations from two of its employees—the same two employees promised to produce for deposition for months but never did—at the summary judgment stage of the case.

Finally, that same contract, negotiated in California, furthered HMC's misappropriation of Soelect's trade secrets. It was the vehicle through which HMC enticed Soelect to send its materials to HMC and it established the duty to keep Soelect's intellectual property secret. This act, and others that in occurred in the United States, form the domestic link between HMC's actions in Korea and cement the DTSA's extraterritorial reach in this case. For these reasons and those below, HMC's motion should be denied.

**2. KEY FACTS**

Soelect, Inc. ("Soelect") alleges that Hyundai America Technical Center, Inc. ("HATCI"), a Hyundai Motor Company ("HMC") subsidiary, entered an MTA agreement with Soelect that gave HMC limited access to Soelect's proprietary materials. *See, e,g.*, [ECF No. 1] at ¶ 9. HMC used the access afforded by the MTA to conduct prohibited testing on Soelect's materials and steal the secrets behind those materials. *Id.* at ¶¶ 10-15.

HATCI is no mere subsidiary of HMC. Instead, HATCI houses a California-based office known as Hyundai CRADLE ("CRADLE"). *See* Nov. 5, 2019, Email Chain, attached hereto as Exhibit B (the 1335 Terra Bella Ave. Mountain View, CA address identified therein is CRADLE's office location). HATCI does not control or direct the business activities of CRADLE; instead, according to HATCI's general counsel, "[Hyundai Motor Company], not HATCI, directs Hyundai CRADLE's projects and business activities." Ex. A, HATCI Aff. HMC's control over CRADLE is so absolute that HATCI contended in the Illinois litigation that it did not have the requisite control over CRADLE—again, a purported office of HATCI—to procure documents or produce discovery related to that office. *See* Resp. Mot. Compel 11-15, attached hereto as Exhibit C.

Among the business activities that HMC "directed" the California-based CRADLE to perform is the MTA. [ECF No. 1] at ¶¶ 17, 25-32. Not only did CRADLE negotiate the MTA from its offices in California, it invited Soelect to California to discuss business related to the samples

it would later provide to HMC. Ex. B.

Soelect separately sued HATCI in Illinois for breaching the MTA between Soelect and HATCI. *See* Illinois Compl., attached hereto as Exhibit D. In that case, Soelect asserted a breach of contract claim. *See generally id.* Soelect does not assert breach of contract in this case; instead, it asserts a claim under the Defend Trade Secrets Act. [ECF No. 1] at ¶¶ 51-52.

### 3.  LEGAL STANDARD

"[T]he plaintiff bears the burden of establishing that jurisdiction is proper," *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); however, when "the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Whenever a decision is rendered on the written materials, courts "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citations omitted).

Under Federal Rule of Civil Procedure 12(b)(3), "[t]he plaintiff bears the burden of showing that venue is proper." *Johnson*, 2023 WL 8654930, at *1.

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege enough facts to state a claim to relief that is plausible." *In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.*, No. 21-MD-02996, 2023 WL 4670291, at *3 (N.D. Cal. July 20, 2023). Those facts must be construed in the light most favorable to the plaintiff. *Id.*

### 4.  THIS COURT CAN EXERCISE PERSONAL JURISDICTION OVER HMC.

Contrary to HMC's assertions, Soelect can prove that HMC "purposefully direct[ed]" pertinent activities at California or that this case arises out of HMC's "forum-related activities." This Court need not take Soelect's word for it. Instead, HATCI, one of HMC's American

subsidiaries, admitted that "[Hyundai Motor Company], not HATCI, directs Hyundai CRADLE's projects and business activities." Ex. A. Hyundai CRADLE is located in Santa Clara County, California, and one of the business activities that it directed is the contract under which Soelect provided its proprietary lithium metal battery materials to HMC. *See* [ECF No. 1] at ¶ 19, 28. HMC is plainly subject to specific personal jurisdiction in the forum where it negotiated the very contract which it used to acquire and then wrongfully test and steal Soelect's proprietary battery materials.

To establish personal jurisdiction, Soelect must show:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. Soelect can show all three.

### a. By the admission of its own subsidiary, HMC "purposefully directed" activities in California.

A defendant purposefully directs its conduct toward a forum whenever it has "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). "There is no requirement that the defendant have any physical contacts with the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir.2010). Moreover, specific personal jurisdiction may be imputed through the actions of a party's agent in a forum. "Agency relationships, [the Supreme Court] recognized, may be relevant to the existence of specific jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). Therefore, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.*

Here, Soelect alleged that an HMC subsidiary operating in Santa Clara County, California—namely, the CRADLE office of HATCI—entered into a contract with Soelect, which was partially negotiated in California. *See, e.g*, [ECF No. 1] at ¶¶ 19, 28. HMC acquired Soelect's proprietary lithium metal battery material under the auspice of the contract that HATCI negotiated in California. *Id.* at ¶ 32. Soelect alleges that HMC then performed prohibited testing and stole Soelect's propriety technology. *Id.* at ¶¶ 37-39; 48. The genesis of HMC's theft was a contract negotiated by the CRADLE office of HMC's subsidiary CRADLE in California—an intentional act aimed at California.

HMC contends that the actions of CRADLE do not subject it to liability in this case. True, the existence of a parent-subsidiary relationship alone is not enough to impute a subsidiary company's contacts to the parent company's contacts. Whenever a subsidiary acts as an agent for the parent corporation, however, the Supreme Court of the United States recognizes that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.*[1]

HMC argues that Soelect "cannot plausibly" allege facts sufficient to show that the CRADLE office's California contacts can be imputed to HMC through the agency theory. Not true. In fact, HATCI, the HMC subsidiary that houses the California-based CRADLE office, specifically stated, through its general counsel, that ""[Hyundai Motor Company], not HATCI, directs Hyundai CRADLE's projects and business activities." Ex. A. HMC exercises such control over the CRADLE office that HATCI refused to produce discovery materials from its CRADLE office because that office was "controlled" by HMC. HATCI's admission that its California-based CRADLE office is directed by HMC is certainly enough to establish a prima facie case that HMC is subject to personal jurisdiction under the agency theory in California. *Schwarzenegger*, 374 F.3d 797, 800 (9th Cir. 2004) (when a motion to dismiss "is based on written materials rather than an

---

[1] In footnote 8 of its Motion to Dismiss, HMC suggests that courts in the Ninth Circuit have doubts about the continuing viability of the agency theory as it relates to specific jurisdiction. Footnote 13 of the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) should quiet those doubts because the Supreme Court specifically stated, "Agency relationships, . . . may be relevant to the existence of specific jurisdiction."

evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts'"). To the extent HMC attempts to contest HATCI's admission that CRADLE is directed by HMC with the declaration of Chayeol Lee, the HATCI affidavit proffered by Soelect wins out at the motion to dismiss phase because "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citations omitted).

HMC also states that it did not "expressly aim" its activities at California because any California ties are "incidental." But the contract was negotiated by CRADLE—a California-based office of an HMC subsidiary that is "directed" by HMC—from its California offices. Not only that, during the business relationship that caused Soelect to provide HMC with its proprietary materials, CRADLE invited Soelect to California for a business meeting. *See* Ex. B. Both cases that HMC cite for the proposition that HMC did not "expressly aim" its activities lack both of these ties to California. *See Serenium, Inc. v. Zhou*, No. 20-CV-02132-BLF, 2021 WL 3111758, at *8 (N.D. Cal. July 22, 2021) (finding no personal jurisdiction in part because "there were no California meetings between the parties here"); *Hit Bound Music, Ltd. v. BBC Films*, No. 216CV7125CBMKSX, 2017 WL 5640543, at *3 (C.D. Cal. June 28, 2017) (determining that using a remote Los Angeles attorney as part of negotiations did not show express aiming in part because "BBC did not travel to California for any business related to the Film"). HMC used California-based CRADLE to entice Soelect to send HMC Soelect's proprietary materials. Ex. A. It invited Soelect to California as part of its efforts to encourage Soelect to send those materials. Ex. B. HMC's activities were therefore expressly aimed at California.

HMC contends that "[n]one of Soelect's allegations, including its allegations about the MTA, shows that the alleged misappropriation—the actual tort at issue—was aimed at California or the United States." [ECF No. 24] at 14. Yet again, HMC oversells its defense. The hook that HMC used to reel in Soelect's proprietary materials—the MTA contract—was negotiated in California by a California-based office of an HMC subsidiary that HMC directed. Ex. A. This case is not *E*Healthline.com, Inc. v. Pharmaniaga Berhad*, No. 218CV01069MCEEFB, 2018 WL

5296291, at *5 (E.D. Cal. Oct. 23, 2018), as HMC claims. In that case, the Malaysian defendant "repeatedly declined to come to California for a meeting, and instead proposed London or Riyadh for exploratory discussions." *Id.* Here, in contrast, HMC used the office of a subsidiary located in California to negotiate the MTA, and it invited Soelect into the forum to discuss business opportunities. Ex. A; Ex. B. That plainly shows—especially at the Motion to Dismiss phase—that HMC is subject to specific personal jurisdiction in California in this case.

Finally, HMC contends that Soelect fails to allege forum-specific harm. But, in cases where intellectual property is stolen, a projected negative effect on the marketplace in a state is sufficient to demonstrate harm is likely to occur in the forum. For example, in a copyright case, a court determined that a plaintiff demonstrated forum-specific harm where it "posit[ed] that by offering unauthorized copies of Plaintiffs' works, Defendant has affected Plaintiffs' large California market by 'decreasing the volume of sales and corresponding revenue there appreciably.'" *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 885 (N.D. Cal. 2012). Here, HMC stole Soelect's lithium metal battery anode technology, which is crucial for the development of electric vehicles. [ECF No. 1] at ¶ 4. California is one of the largest electric vehicle marketplaces in the United States. *California Rises to 21.4% BEV Market Share, 33.8% of US BEV Market*, CleanTechnica, https://cleantechnica.com/2024/02/22/california-rises-to-21-4-bev-market-share-33-8-of-us-bev-market/#:~:text=In%20fact%2C%2033.8%25%20of%20US,from%20below%2010%25%20in%202021 (last visited Mar. 21, 2024). Soelect's decreased ability—or outright inability—to participate in the largest EV marketplace in the United States by virtue of HMC's theft is a forum-specific harm unique to California. Accordingly, Soelect has shown that HMC purposefully directed activities toward California sufficient to subject it to specific personal jurisdiction in this case.

**b. Soelect's DTSA Claim Arises out of HMC's Forum-Related Activities.**

Soelect's DTSA claims plainly arise out of HMC's forum-related activities in California. HMC directed CRADLE, a California based office of its subsidiary, to negotiate the MTA from

California. Then, once the MTA was consummated and Soelect sent its proprietary materials to HMC, HMC stole those materials. *See, e.g.*, [ECF No. 1] at ¶¶ 9-15.

To the extent HMC contends that the MTA was "limited" to a particular timeframe, that is wrong. Paragraph 3 of that agreement expressly recognizes that the parties can alter the timeline of the testing if they agree in writing. [ECF No. 1-2] at ¶ 3. HMC's argument that these were a "new" type of material is wrong too. Soelect plainly stated that the samples it sent in August 2020 were an "advanced version of the LiX Gen1 which is the one in previous [tests]." *See* Sept. 3, 2020 Email Chain at CRADLE0000932, attached hereto as Exhibit E. That was covered under the MTA, which protected not only the materials provided under the initial timeline but "any unmodified derivatives, portions, and derivatives thereof provided concurrently or subsequently by SOELECT." [ECF No. 1-2] at 1.

At the motion to dismiss phase where all inferences must be drawn in favor of Soelect, Soelect has shown that its claims arise out of HMC's contacts with California.[2]

### c. Exercising Personal Jurisdiction over HMC in a forum where it directs the business activities of its subsidiary is eminently reasonable.

HMC contends that it would be unreasonable for this Court to exercise personal jurisdiction over it. Yet again, HMC is wrong. In support of the purported "unreasonableness," HMC offers two flawed arguments. First, it contends that "HMC did not 'purposefully interject itself into the affairs of California." [ECF No. 24] at 15. Its subsidiary disagrees. HATCI offered a sworn statement from its general counsel that "[Hyundai Motor Company], not HATCI, directs Hyundai CRADLE's projects and business activities." Ex. A. HMC's direction of the business of the California-based CRADLE is "interjecting itself into the affairs of California."

California also has an interest in adjudicating Soelect's claims. Soelect may be a non-

---

[2] The authority proffered by HMC in this section is not applicable. For example, it cites *GeoSolutions B.V. v. Sina.com Online*, No. 21-CV-08019-PCP, 2023 WL 7107284, at *5 (N.D. Cal. Oct. 27, 2023), but that case determined that there was no personal jurisdiction where the plaintiff merely alleged "defendants' alleged use of California servers." Here, Soelect alleges that HMC directed a California-based office of its subsidiary to negotiate the MTA—and invite Soelect to California to discuss potential business—and encourage Soelect to send its proprietary technology to South Korea so HMC could steal it. That is a far cry from mere "use of servers" in California.

resident, but it was brought into the forum by CRADLE, a California-based operation that HMC directs, and negotiated a contract that was used as a mechanism to allow HMC to pilfer Soelect's proprietary trade secrets. Personal jurisdiction over HMC is therefore reasonable.

### d. At the minimum, Soelect is entitled to jurisdictional discovery.

Soelect proffered documents showing that HMC directed California-based CRADLE's business activities, including the contract HMC used as an auspice to pilfer Soelect's materials. Ex. A. It showed that CRADLE brought Soelect into California to discuss business relations, including sending the materials that form the basis of this lawsuit. Ex. B. Those documents alone—which "must be resolved in the plaintiff's favor" at the motion to dismiss phase show that HMC's motion to dismiss must be denied. *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citations omitted). Even if HMC's Motion is not denied outright, Soelect it, at the very least, entitled to jurisdictional discovery. That "[d]iscovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). That is the case here.

### 5. VENUE IS PROPER IN THIS DISTRICT.

In one paragraph that cites no meaningful authority, HMC argues that venue is improper because a substantial part of the events of this case did not occur in this district. That is wrong. When determining whether a substantial part of events occurred in a district and give rise to venue this Court must look to "the entire sequence of events underlying the claim," *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir.2001). HMC directed the business activities of CRADLE. CRADLE is based in Santa Clara County. One of the business activities was the negotiation of a contract with Soelect by which HMC procured and wrongfully stole Soelect's lithium metal battery materials. Because the contract that gave HMC access to Soelect's materials was negotiated by CRADLE in Santa Clara County, a substantial portion of the event giving rise to this case occurred there, and venue is proper in this Court.

### 6. SOELECT DID NOT ENGAGE IN CLAIM SPLITTING BECAUSE THE TWO LAWSUITS INVOLVE DIFFERENT CAUSES OF ACTION AND HATCI AND HMC ARE NOT IN PRIVITY.

"The bar of claim-splitting is applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or their privies." *Mendoza v. Amalgamated Transit Union Int'l,* 30 F.4th 879, 886 (9th Cir. 2022). One would expect a claim-splitting argument when different, but related, plaintiffs tried to sue the same defendant over the same incident. Here, HMC attempts to turn the doctrine on its head by arguing that Soelect is somehow precluded from suing HMC, a different defendant, in a different case, for different damages, arising out of a different claim alleging different facts. That is not claim-splitting, and HMC's motion should be denied.

### e. The Illinois case and this case involve different facts, causes of action, operative evidence, and evidence.

In determining whether a second case involves "the same causes of action as the first," the Ninth Circuit has held that the test is: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* "The 'most important' factor is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Id.*

The Illinois case Soelect filed against HATCI alleges a single count of breach of contract arising out of prohibited characterization testing of Soelect's proprietary material. Ex. __. The contract at issue in that case contains a $10 million liquidated damages provision. [ECF No. 1-2] at ¶ 4. Liability and damages were established when the prohibited testing occurred, and nothing more need be proven. Indeed, under North Carolina law, which governs that contract, HATCI, not Soelect, has the burden of proving that a liquidated damages clause was unreasonable. *See WFC Lynnwood I LLC v. Lee of Raleigh, Inc.*, 817 S.E.2d 437, 441 (N.C. App. 2018) ("The party seeking to invalidate a liquidated damages clause[,] bears the burden of proving the provision is invalid."). As much as HATCI wants to argue in the Illinois case that no one in the Hyundai

organization used Soelect's technology, that argument will have little, if any, effect on the outcome of that case. The central issues are whether (1) the testing at issue was prohibited (it was) and (2) the liquidated damages clause in the MTA is reasonable (it is).

This case, however, concerns what HMC did with the knowledge it gained from the prohibited testing of Soelect's material. The central issues are whether (1) Soelect owned a trade secret; (2) HMC misappropriated that secret; and (3) HMC damaged Soelect by misappropriating the trade secret. *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1150 (S.D. Cal. 2022) In this case, for example, discovery and, likely, expert opinion will be necessary to establish the damages to which Soelect is entitled under the DTSA. None of that evidence was established in the Illinois case because it was unnecessary and unrelated to the contract claim at issue there. Soelect simply does not need to prove in Illinois what HMC did after it conducted the prohibited testing. This case focuses on exactly that.

Moreover, Soelect has additional elements of proof in this case that it did not have in Illinois. For example, Soelect must establish here that its LiX material was a "trade secret" and that a "misappropriation" occurred as those terms are defined in the DTSA. See 18 U.S.C. 1836 (civil proceedings) and 1839 (definitions). Those issues were not present in the Illinois case, and the operative nucleus of facts are therefore different. By the same token, no rights are infringed by the adjudication of either case. Whether HATCI breached its contract with Soelect or whether the liquidated damages clause in that contract is enforceable does not bear on whether HMC stole Soelect's proprietary technology.

Indeed, it is not clear how the "operative nucleus of facts" could be the same for a breach of contract claim and a tort claim. Contract and tort are different species of claims governed by different principles of law. *Cf. Motivo Eng'g, LLC v. Black Gold Farms*, No. 222CV01447CASJCX, 2022 WL 4587127, at *5 (C.D. Cal. Sept. 28, 2022) ("The California Supreme Court has 'strongly suggested' that, in the absence of the violation of a duty arising under tort law independently of the breach of contract itself, lower courts should limit recovery in breach of contract actions to the insurance area."). A contract ascribes parties' rights under a breach of

contract claim. Common law or statutes ascribe parties' rights under tort claims. It is unclear how two claims derived from two independent sources of law that hinge upon two separate sets of facts could ever involve the same nucleus of facts. This is true regardless of whether some common facts overlap both claims.

### f. HATCI and HMC are different parties, not in privity.

HMC concedes that HATCI is a "different" party, but contends that it is in privity with HATCI for purposes of the claim-splitting analysis. This is not so. Privity requires HMC to show that "(1) [t]he interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Mendoza*, 30 F.4th at 887–88. HATCI and HMC may have been aligned in the sense that both would prefer to pay Soelect nothing, but more is required.

The second element of the test for privity is certainly not met here. There is no evidence, anywhere, that HATCI believed it was representing HMC in the Illinois case, or that the court in that case "took care" to protect its interests. And there is no evidence that HMC had an "interest" in the breach of contract claim at issue in this Illinois case. HMC's arguments that it participated in that case because certain of its personnel produced self-serving declarations at the summary judgment stage is unavailing. HMC certainly never participated in that case. In fact, HMC thwarted Soelect's efforts to get deposition discovery from it at every turn (even after HATCI agreed to produce the HMC witnesses for deposition). Tellingly, HMC offers nothing—beyond general corporate relationship—that it is HATCI's privy. That is not enough.

### 7. SOELECT ALLEGED DOMESTIC ACTS IN FURTHERANCE OF HMC'S DTSA VIOLATION.

The DTSA defines "misappropriation" as, among other things, "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 USC 1939(5)(B)(ii)(II). The document that created the "duty to maintain the

secrecy of the trade secret or limit [its] use," the MTA, was negotiated and executed within the United States. Thus, under the plain language of the DTSA, at least one act in furtherance of the misappropriation occurred in the United States.

In addition, other acts in furtherance of the misappropriation also occurred domestically. As an example, the communications that led up to Soelect's decision to ship its samples to HMC in Korea involved Hyundai CRADLE, an entity headquartered in California that HMC controls (and that is also part of HATCI, a domestic corporation). Ex. A. If the Court has concerns about the sufficiency of Soelect's allegations in this regard, Soelect should be granted leave to amend.

But amendment is not necessary. In fact, a court considering similar facts to those alleged by Soelect determined that a plaintiff adequately alleged a DTSA claim. In *Medcenter Holdings Inc. v. WebMD Health Corp.*, No. 1:20-CV-00053 (ALC), 2021 WL 1178129, at *6 (S.D.N.Y. Mar. 29, 2021), a court determined that plaintiff adequately alleged domestic acts in furtherance of a DTSA claim where the plaintiff alleged the defendant used an NDA to acquire and pilfer trade secret. In that case, the plaintiff alleged a "meeting between Aristu and Schneider in Miami, FL; the negotiation of the NDA in New York, which Medcenter contends was a Trojan Horse for WebMD Defendants to learn about Medcenter's employees and proprietary databases; and Aristu's consulting work with WebMD, which her contract indicates would take place partly in the United States." *Id.* The Court determined those allegations defeated defendant's claims of extraterritoriality and denied the defendant's motion to dismiss. This Court should do the same. HMC directed the California-based CRADLE to negotiate an MTA that gave HMC access to Soelect's proprietary materials in the United States. HMC then used that access to pilfer the secrets behind those proprietary materials abroad. The initial United States activity is a domestic act in furtherance of HMC's DTSA violation.

## CONCLUSION

For the reasons stated above, this Court should deny HMC's Motion to Dismiss.

Dated:  March 22, 2024

Respectfully submitted,

BAILEY & GLASSER, LLP

By:   /s/*Todd A. Walburg*
Todd A. Walburg (State Bar No. 213063)
*twalburg@baileyglasser.com*
1999 Harrison Street, Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000
Facsimile: (510) 463-0291

Benjamin L. Bailey (*to be admitted pro hac vice*)
*bbailey@baileyglasser.com*
Eric B. Snyder (*to be admitted pro hac vice*)
*esnyder@baileyglasser.com*
Christopher D. Smith (*to be admitted pro hac vice*)
*csmith@baileyglasser.com*
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

*Attorneys for Plaintiff Soelect, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2024, I electronically filed the foregoing document with the Clerk of Court using the ECF system that will send notification of such filing upon all ECF filing participants.

/s/*Todd A. Walburg*
Todd A. Walburg (State Bar No. 213063)