LATHAM & WATKINS LLP
Douglas E. Lumish (SBN 183863)
 doug.lumish@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600

Matthew W. Walch (*Pro Hac Vice*)
 matthew.walch@lw.com
Gary Feinerman (*Pro Hac Vice)*
 gary.feinerman@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700

(Additional Counsel Listed on Signature Page)

*Attorneys for Defendant Hyundai Motor Company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SOELECT, INC., <br><br> Plaintiff, <br><br> v. <br><br> HYUNDAI MOTOR COMPANY, <br><br> Defendant. | Case No. 3:23-cv-05405-CRB <br><br> **DEFENDANT HYUNDAI MOTOR COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT** <br><br> Courtroom:  6 – 17th Floor <br> Judge:  Hon. Charles R. Breyer <br> Action Filed:  Oct. 20, 2023 <br><br> Date:   September 20, 2024 <br> Time:   10:00 a.m. |

**TABLE OF CONTENTS**

Page

I.  THE COURT LACKS PERSONAL JURISDICTION OVER HMC ............................... 2

    A.  Soelect's Agency Theory For Personal Jurisdiction Fails ..................................... 2

    B.  Soelect Fails to Identify Any Relevant Acts Expressly Aimed at California ........ 4

    C.  Soelect Fails to Identify Any Harm Likely to Be Suffered in California .............. 6

    D.  Soelect's One-Count Complaint Does Not Arise Out of California Acts ............. 7

    E.  Exercising Personal Jurisdiction Over HMC Would Be Unreasonable................. 7

    F.  Soelect Is Not Entitled to Jurisdictional Discovery ............................................... 8

II. THIS DISTRICT IS AN IMPROPER VENUE................................................................. 8

III. SOELECT'S SUIT IS BARRED BY THE CLAIM SPLITTING DOCTRINE ............... 9

    A.  The Most Important Factor in the Claim Splitting Doctrine Is Met, as Soelect's Filings Confirm .................................................................................... 9

    B.  Soelect's Other Arguments on the Claim Splitting Factors Fail.......................... 10

IV. SOELECT'S DTSA CLAIM FAILS ON THE MERITS FOR LACK OF A DOMESTIC "ACT IN FURTHERANCE" OF THE ALLEGED MISAPPROPRIATION ........................................................................................................ 12

V.  CONCLUSION................................................................................................................ 13

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

i

CASE NO. 3:23-cv-05405-CRB
HMC'S REPLY ISO
MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adams v. Cal. Dep't of Health Servs.*,
  487 F.3d 684 (9th Cir. 2007) .................................................................................................2, 9, 11

*Aldini AG v. Silvaco, Inc.*,
  No. 21-cv-06423, 2022 WL 20016826 (N.D. Cal. Aug. 3, 2022) ...................................2, 8, 12

*Anguiano-Tamayo v. Wal-Mart Assocs., Inc.*,
  No. 18-cv-04598, 2019 WL 359417 (N.D. Cal. Jan. 29, 2019)...............................................12

*Bates v. Bankers Life & Cas. Co.*,
  993 F. Supp. 2d 1318 (D. Or. 2014) .........................................................................................4

*Beijing Neu Cloud Oriental v. IBM*,
  No. 21-cv-7589, 2022 WL 889145 (S.D.N.Y. Mar. 25, 2022)................................................12

*Bepex Int'l v. Micron BV*,
  No. 19-cv-2997, 2023 WL 2975699 (D. Minn. Apr. 17, 2023)..........................................12, 13

*Buff City Soap v. Bynum*,
  No. 2:21-02462, 2022 WL 1285045 (W.D. Tenn. Apr. 29, 2022) ............................................9

*Cisco Sys., Inc. v. Dexon Comput., Inc.*,
  No. 20-cv-04926, 2023 WL 3032061 (N.D. Cal. Apr. 21, 2023).............................................1

*Daimler v. Bauman*,
  571 U.S. 117 (2014)..................................................................................................................3

*DFSB Kollective Co. v. Bourne*,
  897 F. Supp. 2d 871 (N.D. Cal. 2012) ......................................................................................6

*E*Healthline.com, Inc. v. Pharmaniaga Berhad*,
  2018 WL 5296291 (E.D. Cal. Oct. 23, 2018)...........................................................................5

*E*Healthline.com, Inc. v. Pharmaniaga Berhad*,
  No. 20-17182, 2022 WL 1744060 (9th Cir. May 31, 2022).....................................................7

*Elofson v. Bivens*,
  No. 15-cv-05761, 2017 WL 566323 (N.D. Cal. Feb. 13, 2017)...........................................6, 8

*Estrada v. City of San Luis*,
  No. 07-cv-1071, 2008 WL 3286112 (D. Ariz. Aug. 7, 2008) .........................................10, 11

*GeoSolutions B.V. v. Sina.com Online*,
  No. 21-cv-08019, 2023 WL 7107284 (N.D. Cal. Oct. 27, 2023) .........................................7, 8

*HDT Bio Corp. v. Emcure Pharms., Ltd.*,
  No. 22-cv-0334, 2023 WL 9094355 (W.D. Wash. Dec. 4, 2023) .................................3, 4, 6, 7

*Hempel v. Cydan Dev., Inc.*,
  No. 3:18-cv-00008, 2018 WL 5777491 (D. Nev. Nov. 2, 2018).............................................6

*Herrera v. Countrywide KB Home Loans*,
  No. 5:11-cv-03591, 2012 WL 901340 (N.D. Cal. Mar. 15, 2012) .........................................10

*Hueter v. Kruse*,
  No. 21-cv-00415, 2021 WL 5238763 (D. Haw. Nov. 10, 2021)............................................11

*Iconlab Inc. v. Valeant Pharms. Int'l, Inc.*,
  No. 816-cv-01321, 2017 WL 7240856 (C.D. Cal. Apr. 25, 2017), *aff'd*, 828 F.
  App'x 363 (9th Cir. 2020) ....................................................................................................3, 4

*iSpot.tv, Inc. v. Teyfukova*,
  No. 2:21-CV-06815, 2023 WL 1967958 (C.D. Cal. Jan. 25, 2023)........................................11

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ...............................................................................................13

*Mackey v. Pioneer Nat'l Bank*,
  867 F.2d 520 (9th Cir. 1989) .................................................................................................11

*Marchioli v. Pre-employ.com, Inc.*,
  No. 17-cv-1566, 2017 WL 8186761 (C.D. Cal. June 30, 2017).............................................10

*Matthews Int'l Corp. v. Lombardi*,
  No. 2:20-cv-00089, 2020 WL 1309399 (W.D. Pa. Mar. 19, 2020).........................................9

*Medcenter Holdings v. WebMD Health*,
  No. 1:20-cv-00053, 2021 WL 1178129 (S.D.N.Y. Mar. 29, 2021)........................................13

*Media Rts. Techs. v. Microsoft Corp.*,
  922 F.3d 1014 (9th Cir. 2019) .................................................................................................9

*Mendoza v. Amalgamated Tr. Un. Int'l*,
  30 F.4th 879 (9th Cir. 2022) ................................................................................2, 9, 10, 11

*MGA Entm't, Inc. v. Mattel, Inc.*,
  No. 11-cv-01063, 2011 WL 5007955 (C.D. Cal. Oct. 20, 2011) ...........................................10

*MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*,
  No. 3:22-cv-07604, 2024 WL 3408221 (N.D. Cal. July 12, 2024) .......................................1, 3

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) .......................................................................................4, 5, 6, 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

CASE NO. 3:23-cv-05405-CRB
HMC'S REPLY ISO
MOTION TO DISMISS

*Pollok v. Vanguard Mktg.*,
  No. 18-cv-1099, 2018 WL 6118602 (C.D. Cal. May 29, 2018) ............................................... 11

*Pray, Inc. v. Christian Care Ministry, Inc.*,
  No. 2:23-CV-10660, 2024 WL 1680053 (C.D. Cal. Apr. 5, 2024) .......................................... 5

*ProV Int'l v. Lucca*,
  No. 8:19-cv-978, 2019 WL 5578880 (M.D. Fla. Oct. 29, 2019) ............................................ 12

*Ranza v. Nike*,
  793 F.3d 1059 (9th Cir. 2015) .................................................................................................. 2

*Serenium, Inc. v. Zhou*,
  No. 20-cv-02132, 2021 WL 3111758 (N.D. Cal. July 22, 2021) ................................... 1, 5, 8

*Sunderland v. PharmaCare U.S., Inc.*,
  No. 23-cv-1318, 2024 WL 2116069 (S.D. Cal. May 10, 2024) ........................................ 3, 8

*Terra Tech Corp. v. Vandevrede*,
  No. 18-cv-602, 2019 WL 1877607 (C.D. Cal. Feb. 27, 2019) ................................................ 5

*U.S. Bank N.A. v. Fid. Nat'l Title Grp., Inc.*,
  No. 2:20-cv-01955, 2024 WL 229667 (D. Nev. Jan. 19, 2024) .............................................. 3

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................................................................. 6

*Williams v. Yamaha Motor Co. Ltd.*,
  851 F.3d 1015 (9th Cir. 2017) .................................................................................................. 3

*Zike, LLC v. Catalfumo*,
  No. 6:11-cv-1841, 2012 WL 12867973 (D.S.C. Feb. 29, 2012) ............................................. 8

**STATUTES**

18 U.S.C. § 1837 .................................................................................................................... 2, 12

28 U.S.C. § 1391 ........................................................................................................................ 1

Soelect's opposition to HMC's motion to dismiss confirms that its claims should be dismissed for four independent reasons.

*First*, this Court lacks personal jurisdiction over HMC. Soelect advances only an "agency theory" for personal jurisdiction, contending that the activities of CRADLE, an office of an HMC subsidiary (HATCI), should be imputed to HMC. But as a court in this District reiterated last month, "the agency test cannot be the basis of this Court's exercise of specific personal jurisdiction." *MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*, No. 3:22-cv-07604, 2024 WL 3408221, at *4 (N.D. Cal. July 12, 2024). Further, even if Soelect could use an agency theory to support personal jurisdiction, Soelect fails to show that HMC possessed the requisite control over CRADLE's day-to-day activities. To the contrary, uncontroverted testimony confirms that HMC does not exercise such control. Dkt. 24-11 at ¶ 9. Soelect also fails to (i) identify any allegedly tortious conduct that *HMC* aimed at California, (ii) identify any plausible harm that HMC knew was likely to be suffered in California, or (iii) show that its DTSA claim arises out of California acts. Exercising personal jurisdiction over HMC would be unreasonable. *See Cisco Sys., Inc. v. Dexon Comput., Inc.*, No. 20-cv-04926, 2023 WL 3032061, at *1-2 (N.D. Cal. Apr. 21, 2023); *Serenium, Inc. v. Zhou*, No. 20-cv-02132, 2021 WL 3111758, at *3, *5 (N.D. Cal. July 22, 2021).

*Second*, this District is an improper venue. Soelect argues that a "substantial part" of the events of this case occurred in this District. Dkt. 31 at 9. But Soelect does not allege sufficient contacts for personal jurisdiction, let alone that a "substantial" part of this case happened here. Venue is thus improper. *See* 28 U.S.C. § 1391.

*Third*, Soelect's claim is barred by the anti-claim splitting doctrine. As Soelect admits, the "most important factor" under that doctrine is "whether the two suits arise out of the same transactional nucleus of facts." Dkt. 31 at 10. That metric is satisfied. Soelect's DTSA claim in this case and its breach of contract claim in the HATCI Matter are founded on the same allegedly improper conduct—namely, HMC's testing and alleged SEM imaging of LiX samples that Soelect shipped to HMC in South Korea in August 2020. Dkt. 24 at 11-12. Indeed, Soelect admits that this case and the HATCI Matter turn on the same "key" issues (Dkt. 39 at 5-6), confirming that it

is improperly trying to present the same "narrative," based on the same nucleus of facts, in two separate forums. *See Mendoza v. Amalgamated Tr. Un. Int'l*, 30 F.4th 879, 887-89 (9th Cir. 2022); *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688-90 (9th Cir. 2007).

*Fourth*, Soelect fails to state a claim upon which relief can be granted because its DTSA claim is based on conduct that allegedly occurred in South Korea, and Soelect has not alleged a domestic act in furtherance of the alleged misappropriation. Soelect argues the negotiation and execution of, and communications relating to, the MTA satisfy the DTSA's domestic act requirement. Dkt. 31 at 12-13. But none of those acts were performed by HMC. And negotiating and executing a contract is not, absent some scheme or conspiracy (which Soelect does not and cannot plausibly allege) an act in furtherance of misappropriation. 18 U.S.C. § 1837; *Aldini AG v. Silvaco, Inc.*, No. 21-cv-06423, 2022 WL 20016826, at *14 (N.D. Cal. Aug. 3, 2022).

## I. THE COURT LACKS PERSONAL JURISDICTION OVER HMC

The Court lacks personal jurisdiction over HMC (Dkt. 24 at 4-9), and Soelect's contrary arguments are meritless.

### A. Soelect's Agency Theory For Personal Jurisdiction Fails

Soelect's opposition confirms that Soelect's entire theory for personal jurisdiction over HMC turns on the activities of "a California-based office of an HMC subsidiary," i.e., CRADLE. Dkt. 31 at 6. To be clear, CRADLE is an *office* of non-party HATCI, a Michigan company. Dkt. 24-11 at ¶¶ 4-5; *see also* Dkt. 31-2 at ¶ 3-4. And HATCI is a subsidiary of defendant HMC, a South Korean company. Dkt. 24-11 at ¶¶ 2-4; *see also* Dkt. 1 at ¶ 17; Dkt. 31-2 at ¶ 3. Soelect concedes, as it must, that "the existence of a parent-subsidiary relationship alone is not enough to impute a subsidiary's contacts to the parent company" for jurisdiction. Dkt. 31 at 5; *see Ranza v. Nike*, 793 F.3d 1059, 1070 (9th Cir. 2015). Yet Soelect nevertheless contends that CRADLE's contacts can be imputed to HMC under its "agency theory." Dkt. 31 at 4-6.[1] Soelect is wrong.

First, as HMC explained in its motion, courts in this Circuit have expressed doubts about the continued viability of an "agency theory" for personal jurisdiction. Dkt. 24 at 7 n.8. In fact,

---

[1] Soelect rightly does not contend that HMC is subject to this Court's general jurisdiction, or that HMC is subject to personal jurisdiction under an "alter ego" theory. *See* Dkt. 24 at 4, 6-7 & n.8.

last month, a court in this District reiterated that "the Ninth Circuit has [] rejected the agency test in the context of specific jurisdiction," so "the agency test cannot be the basis of this Court's exercise of specific personal jurisdiction." *MSP Recovery Claims*, 2024 WL 3408221, at *4 (citing *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024 (9th Cir. 2017)).[2]

Second, even if Soelect could in theory use an agency theory to support personal jurisdiction, it must, at a minimum, demonstrate that HMC has "the right to substantially control its subsidiary's activities." *Iconlab*, 2017 WL 7240856, at *5. This requires a showing of "higher than 'normal oversight'" that is "akin to 'control of day-to-day operations.'" *Sunderland v. PharmaCare U.S., Inc.*, No. 23-cv-1318, 2024 WL 2116069, at *4 (S.D. Cal. May 10, 2024) (citation omitted); *accord HDT Bio Corp. v. Emcure Pharms., Ltd.*, No. 22-cv-0334, 2023 WL 9094355, at *10 (W.D. Wash. Dec. 4, 2023). Soelect fails to, and cannot, make such a showing.

Soelect repeatedly emphasizes one phrase plucked from a declaration of HATCI's general counsel, Mr. Torigian, from the HATCI Matter. Dkt. 31 at 1, 5-7. In relevant part, Mr. Torigian averred that "the U.S. office of Hyundai CRADLE is part of HATCI," but "for reporting work and business deliverables, Hyundai CRADLE reports to HMC, and HMC, not HATCI, directs Hyundai CRADLE's projects and business activities." Dkt. 31-2 at ¶ 4. Mr. Torigian's statement does not satisfy Soelect's burden; it does not show that any HMC involvement in HATCI's (or CRADLE's) activities rises to "higher than normal oversight" akin to control over "day-to-day operations." *Sunderland*, 2024 WL 2116069, at *4. To the contrary, uncontroverted testimony from HMC's Ms. Chaeyeol Lee confirms that HMC does not exercise such control. *See* Dkt. 24-11 at ¶ 9

---

[2] Soelect defends its "agency theory" with a footnote from *Daimler v. Bauman*, 571 U.S. 117 (2014), providing "[a]gency relationships … may be relevant to the existence of specific jurisdiction." Dkt. 31 at 5 n.1 (citing *Daimler*, 571 U.S. at 135 n.13 (emphasis added)). As the Ninth Circuit opined in *Williams*, that footnote "left open the question of whether an agency relationship might justify the exercise of specific jurisdiction." 851 F.3d at 1023. It further explained, though, that *Daimler*'s "criticism" of its prior agency analysis applies "in the context of specific jurisdiction." *Id.* at 1024. And so, courts in this Circuit have since questioned the viability of "the agency test for … specific jurisdiction." *U.S. Bank N.A. v. Fid. Nat'l Title Grp., Inc.*, No. 2:20-cv-01955, 2024 WL 229667, at *4 n.1 (D. Nev. Jan. 19, 2024); *see Iconlab Inc. v. Valeant Pharms. Int'l, Inc.*, No. 816-cv-01321, 2017 WL 7240856, at *5 (C.D. Cal. Apr. 25, 2017) ("the Ninth Circuit has not enunciated what standard to apply after *Daimler*"), *aff'd*, 828 F. App'x 363 (9th Cir. 2020).

("HMC does *not* control HATCI's day-to-day operations.").³ Further, there is no "[c]onflict[]" between Mr. Torigian's and Ms. Lee's statements, as Soelect asserts. *See* Dkt. 31 at 6. A corporate parent can be involved with a subsidiary—e.g., by "supervis[ing] the subsidiary's finance and capital budget decisions" and "articulat[ing] general policies and procedures of the subsidiary," or, as Mr. Torigian stated, "direct[ing] … projects and business activities" (Dkt. 31-2 at ¶ 4)—without engaging in the "day-to-day control" necessary to establish an agency relationship for specific jurisdiction. *HDT*, 2023 WL 9094355, at *11 ("shap[ing] [] broader business objectives" and "broader strategic planning" insufficient); *see also Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1339 (D. Or. 2014) ("garden-variety forms of agency are insufficient").

Soelect also argues that "the MTA 'contemplates an express delegation of *HATCI's* obligations *to HMC* scientists,'" and "delegat[ion] [of] performance from California to South Korea" leads to personal jurisdiction over HMC here. Dkt. 40 at 2. This argument is misplaced. There is no basis to find any delegation "from California to South Korea" (*id.*), as HATCI is a Michigan entity (Dkt. 1-2 at 2). And, this argument contravenes basic tenets of agency law, which look to actions the alleged *principal* (here, HMC) directed the purported *agent* (here, HATCI) to take. *Cf. Iconlab*, 828 F. App'x at 365 (rejecting reliance on "novel reverse-agency theory").

Because Soelect fails to meet its burden on its "agency theory" for personal jurisdiction—as its theory is no longer viable and CRADLE's activities cannot be imputed to HMC—the Court's analysis of personal jurisdiction can end here, and the complaint should be dismissed.

**B.     Soelect Fails to Identify Any Relevant Acts Expressly Aimed at California**

Even if the Court were to impute CRADLE's activities to HMC, Soelect still fails to satisfy its burden of showing the Court may exercise jurisdiction over HMC, because Soelect cannot meet the governing purposeful direction test. Dkt. 24 at 5; *see also Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (purposeful direction requires that a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state"). The CRADLE activities upon which Soelect relies, whether considered individually or together, fall short of satisfying this test.

---

³ Unless otherwise noted, emphasis is added and internal quotations and citations are omitted.

First, Soelect asserts that "HMC directed CRADLE, a California based office of its subsidiary, to negotiate the MTA from California," an event it now casts as the "genesis" of HMC's alleged misappropriation. Dkt. 31 at 5, 7-8. But Soelect does not allege any wrongdoing in the course of the MTA's negotiation or anything to support the notion that HMC specifically directed the MTA's negotiation, much less its negotiation "*from California.*" *Id.* at 8; *cf.* Dkt. 24-11 at ¶ 9 ("HMC does not control HATCI's day-to-day operations."). Further, the MTA was negotiated and entered into by a Delaware entity (Soelect) and a Michigan entity (HATCI), it is governed by North Carolina law, it includes an exclusive choice of forum clause selecting Illinois as the forum for any dispute, and it contemplates performance in South Korea. *See* Dkt. 1-2 at 2, 3, 5. There was "no contemplation that California would play a role in any of" the resulting arrangement, and any incidental involvement of a California office during the MTA's negotiation does not change that fact. *E*Healthline.com, Inc. v. Pharmaniaga Berhad*, 2018 WL 5296291, at *5 (E.D. Cal. Oct. 23, 2018); *accord Serenium*, 2021 WL 3111758, at *6; *cf. Picot*, 780 F.3d at 1210, 1214-15 (conduct underpinning intentional interference with contract claim not aimed at California, even where the contract was executed in California).

Second, Soelect cites a single invitation it ostensibly received to meet with CRADLE in California. Dkt. 31 at 6-7; Dkt. 31-3. But a single invitation to a California meeting is not enough to hale HMC into this Court. *E.g.*, *Picot*, 780 F.3d at 1213 ("two trips to California" not enough); *Terra Tech Corp. v. Vandevrede*, No. 18-cv-602, 2019 WL 1877607, at *8 n.6 (C.D. Cal. Feb. 27, 2019) (five board meetings in California not enough); *E*Healthline.com*, 2018 WL 5296291, at *1, *5 ("one in-person meeting" in California not enough).[4] That is particularly true here, where Soelect neither alleges nor argues that this invitation from November 2019 (Dkt. 31-3)—i.e., over a month after the MTA was executed and nearly a year before any alleged misappropriation—relates, in any way, to its DTSA claim. *E.g.*, *Pray, Inc. v. Christian Care Ministry, Inc.*, No. 2:23-CV-10660, 2024 WL 1680053, at *5 (C.D. Cal. Apr. 5, 2024) ("three meetings in California" not enough for jurisdiction over DTSA claim where "complaint provide[d] little detail about [their]

---

[4] Soelect tries to distinguish *E*Healthline.com* on the basis that other invitations were "declined." Dkt. 31 at 6-7 (citing 2018 WL 5296291, at *5). That is immaterial. Here, Soelect points to—at most—one invitation to California, akin to the one in-state meeting in *E*Healthline.com*.

content"); *Hempel v. Cydan Dev., Inc.*, No. 3:18-cv-00008, 2018 WL 5777491, at *5 (D. Nev. Nov. 2, 2018) (in-state visit that was "not challenged conduct" or "integral" to plaintiffs' claims not enough).

Third, Soelect argues that the ostensible "delegation of HATCI's obligations" under the MTA to "HMC scientists" amounts to a "delegat[ion] of performance from California to South Korea." Dkt. 40 at 2. At best, this shows conduct aimed *away from* California.

### C. Soelect Fails to Identify Any Harm Likely to Be Suffered in California

Soelect also fails to satisfy the purposeful direction test because it cannot identify any harm that HMC knew was "likely to be suffered" by Soelect in California. *Picot*, 780 F.3d at 1214. In fact, Soelect does not even try to argue that the three CRADLE activities it cites "caused some sort of harm" in California. *HDT*, 2023 WL 9094355, at *8 (U.S. investors' presence at meetings did not support jurisdiction, where no harm was alleged based on that activity). Instead, Soelect concocts the following meritless and unpled theory of California-based harm: Soelect makes battery technology; battery technology is important to electric vehicles; California has a large electric vehicle market; and, as a result, harm has occurred in California because Soelect's ability "to participate" in this market was impaired. Dkt. 31 at 7. But Soelect is a Delaware company with a presence in North Carolina (not California), and—at least as of January 2024—had never sold any commercial product anywhere, let alone in California. *See HATCI Matter*, Dkt. 138 at 5. Soelect's speculation and hypothesized future harm in California, based on only a theoretical relationship with this state and attorney argument, cannot support jurisdiction. *See Elofson v. Bivens*, No. 15-cv-05761, 2017 WL 566323, at *5 (N.D. Cal. Feb. 13, 2017) (rejecting reliance on "speculation" that act might harm plaintiff in California); *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) (defendant's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs who he knew had Nevada connections").[5]

---

[5] Soelect's citation to *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871 (N.D. Cal. 2012) is no help to it. Dkt. 31 at 7. In that case, allegations that "California [was] one of the largest markets for Korean music" and that "defendant's websites were frequently mentioned as a place to download music" on a California-based website was "not enough to make a prima facie showing that defendant expressly aimed his conduct at California." 897 F. Supp. 2d at 874.

Soelect's failure to meet the purposeful direction test is an independent basis for dismissal for want of personal jurisdiction.

### D. Soelect's One-Count Complaint Does Not Arise Out of California Acts

Even if the Court were to determine (i) that Soelect's "agency theory" for personal jurisdiction is viable, and (ii) that Soelect can satisfy the purposeful direction test, this case still should be dismissed because Soelect's DTSA claim does not "arise[] out of or relate[] to [HMC's alleged] forum-related activities." *Picot*, 780 F.3d at 1211. Soelect does not allege, for example, that it was tricked into sharing secrets when invited to a California meeting in November 2019, or that misrepresentations during the MTA negotiations lured it into sharing secrets. *Cf. GeoSolutions B.V. v. Sina.com Online*, No. 21-cv-08019, 2023 WL 7107284, at *5 (N.D. Cal. Oct. 27, 2023) (no personal jurisdiction where plaintiff did not allege the "'shadow department' responsible for siphoning [the] technology operated in any way out of California, or that California servers provided a means for the misappropriation").[6] Far from showing the requisite "close connection" to California (*id.*), the contacts Soelect alleges are "too 'attenuated' to suffice." *E*Healthline.com, Inc. v. Pharmaniaga Berhad*, No. 20-17182, 2022 WL 1744060, at *1 (9th Cir. May 31, 2022) ("defendants' other alleged contacts with California—Pharmaniaga's single visit to EHL's offices and Modern's engagement with a California-based consultant—are too 'attenuated' to suffice").

### E. Exercising Personal Jurisdiction Over HMC Would Be Unreasonable

Even if Soelect could clear the foregoing hurdles, it would be unreasonable for this Court to exercise personal jurisdiction over HMC. Dkt. 24 at 9. Soelect was not "brought" into this forum by HMC. *See* Dkt. 31 at 9. And due process demands more than the in-state presence of one office of one subsidiary. *Compare id.* at 8-9 (Soelect arguing HMC's relationship with a subsidiary's office renders jurisdiction reasonable) *with HDT*, 2023 WL 9094355, at *10 ("due process demands respect for corporate separateness"). At base, Soelect alleges that it "voluntarily

---

[6] Soelect incorrectly tries to distinguish *GeoSolutions* as a case "where the plaintiff merely 'alleged defendants' use of California servers.'" Dkt. 31 at 8 n.2; *see* 2023 WL 7107284, at *4 (plaintiff alleged that defendants employed agents in California). Regardless, Soelect does not dispute *GeoSolutions*' applicable teachings—i.e., contacts can be too attenuated to support personal jurisdiction.

sent its trade secrets to [South Korea], where the alleged misappropriation occurred," and this led to a dispute between Delaware and South Korean entities. *Serenium*, 2021 WL 3111758, at *7. Such facts are insufficient to establish personal jurisdiction. As a result, this Court is not a proper home for the parties' dispute.

### F. Soelect Is Not Entitled to Jurisdictional Discovery

The Court should reject Soelect's request for jurisdictional discovery. *See* Dkt. 31 at 9. Such discovery is not warranted "based on little more than a hunch that it might yield jurisdictionally relevant facts." *GeoSolutions*, 2023 WL 2562392, at *8. Nor is it justified where, as here, the plaintiff makes an "attenuated" claim of jurisdiction, "based on bare allegations in the face of specific denials made by the defendants," and "fail[s] to demonstrate how further discovery would allow it to contradict the defendant's affidavits." *Sunderland*, 2024 WL 2116069, at *5; Dkt. 24-11 at ¶¶ 6-9. Soelect does not explain how or why any additional discovery would advance its cause on the question of personal jurisdiction, which is especially notable as Soelect received discovery from HATCI on the MTA in the HATCI Matter—or why Soelect would need additional discovery *from HMC* to show how "*CRADLE* [allegedly] brought Soelect into California." Dkt. 31 at 9. No such "fishing expedition" should be allowed. *Sunderland*, 2024 WL 2116069, at *5; *see Aldini*, 2022 WL 20016826, at *13 (rejecting request for jurisdictional discovery where a plaintiff, like Soelect, failed to "establish[] a colorable basis for personal jurisdiction" and instead adduced "attenuated jurisdictional contacts" that did not "indicat[e] direct targeting of California").

## II. THIS DISTRICT IS AN IMPROPER VENUE

This District is an improper venue. Dkt. 24 at 10. Soelect argues that "a substantial part of the events of this case" occurred in this District. Dkt. 31 at 9. That is incorrect. Soelect does not allege sufficient contacts for personal jurisdiction, let alone that a "substantial" part of this case happened here. *See* Section I. Venue is thus improper, warranting dismissal. *See Elofson*, 2017 WL 566323, at *14-15; *Zike, LLC v. Catalfumo*, No. 6:11-cv-1841, 2012 WL 12867973, at *3 (D.S.C. Feb. 29, 2012) (venue improper for trade secret claim even where, *inter alia*, "Defendants made trips to" venue "during which the [relevant] NDA was signed").

### III. SOELECT'S SUIT IS BARRED BY THE CLAIM SPLITTING DOCTRINE

Soelect's suit also should be dismissed for improper claim splitting.

#### A. The Most Important Factor in the Claim Splitting Doctrine Is Met, as Soelect's Filings Confirm

As Soelect admits, the "most important factor" for the Court's claim splitting analysis is "whether the two suits arise out of the same transactional nucleus of facts" (factor 4). Dkt. 31 at 10 (quoting *Mendoza*, 30 F.4th at 886). This factor is satisfied because Soelect's DTSA claim in this case and its breach of contract claim in the HATCI Matter are founded on the same allegedly improper conduct—namely, HMC's testing and alleged SEM imaging of LiX samples that Soelect shipped to HMC in South Korea in August 2020. Dkt. 24 at 11-12.

Soelect argues the "central issues" in this case and the HATCI Matter differ because it asserts a breach of contract claim in the HATCI matter and a DTSA claim here. Dkt. 31 at 10-11. But "[t]he operative facts as pled in the complaint, rather than the issues to be resolved, are what matter for claim-splitting purposes." *Buff City Soap v. Bynum*, No. 2:21-02462, 2022 WL 1285045, at *10 (W.D. Tenn. Apr. 29, 2022) (misappropriation and business tort claims improperly split where they shared "the same key facts"); *see also Media Rts. Techs. v. Microsoft Corp.*, 922 F.3d 1014, 1027 (9th Cir. 2019) (collecting cases showing that, for "the common-nucleus criterion," courts are "most concerned with the facts or events from which the alleged harms rose," not particular legal theories).

Soelect also contends the HATCI Matter differs from this case because "damages are liquidated" there, meaning it "does not need to prove" there "what HMC did after it conducted the prohibited testing." Dkt. 31 at 1, 11; *see also* Dkt. 39 at 1, 5-6. But that contention cannot be squared with Soelect's refusal to stipulate in the HATCI matter that it will not seek actual damages. Ex. H (Soelect's counsel: "[W]e do not intend to stipulate to no actual damages.").[7] And, in any event, Soelect's contention proves HMC's point—Soelect aims to present the same "narrative," based on the same nucleus of facts, in two separate forums, with only (and now, only potentially) some difference in the relief it pursues. *See Adams*, 487 F.3d at 690; *Matthews Int'l Corp. v.*

---

[7] Unless otherwise noted, lettered exhibits are attached to the accompanying Declaration of Christopher W. Henry, and exhibit lettering picks up where it left off in HMC's opening brief.

*Lombardi*, No. 2:20-cv-00089, 2020 WL 1309399, at *1 (W.D. Pa. Mar. 19, 2020) ("slight differences in causes of action and intended relief" between contract and trade secret claims were "purely semantic").

Indeed, Soelect's recent filings before this Court confirm that it has engaged in improper claim splitting because this case and the HATCI Matter arise out of the same transactional nucleus of facts. Opposing HMC's motion to stay, Soelect argues that the HATCI Matter court "resolve[d] key issues present in this case." Dkt. 39 at 5-6.[8] Similarly, in opposing HMC's motion to dismiss, Soelect asserts the MTA "was the vehicle through which" HMC misappropriated trade secrets. Dkt. 31 at 2. Common sense dictates that cases presenting the same "key" issues, based on the same alleged misconduct in performance of the same contract, share a factual nucleus. The "most important factor" for the claim splitting doctrine is satisfied. *See* Dkt. 24 at 10-12; *see also Mendoza*, 30 F.4th at 886; *e.g.*, *Herrera v. Countrywide KB Home Loans*, No. 5:11-cv-03591, 2012 WL 901340, at *4 (N.D. Cal. Mar. 15, 2012) ("[S]atisfaction of the fourth [] factor alone is often sufficient to find an identity of claims.").

### B.   Soelect's Other Arguments on the Claim Splitting Factors Fail

Soelect's other scattershot arguments on the claim splitting doctrine's factors likewise fail because they are factually and legally misplaced.

Soelect argues there are "additional elements of proof in this case" that are not present in the HATCI Matter. Dkt. 31 at 11. But this does not preclude application of the claim splitting doctrine, which holds that "[t]he evidence need only be similar, not identical." *Estrada v. City of San Luis*, No. 07-cv-1071, 2008 WL 3286112, at *3 (D. Ariz. Aug. 7, 2008); *see also Marchioli v. Pre-employ.com, Inc.*, No. 17-cv-1566, 2017 WL 8186761, at *17 (C.D. Cal. June 30, 2017) (need for "additional evidentiary detail" was "insufficient" to show "that 'the two actions rely on different facts and evidence'"); *cf. MGA Entm't, Inc. v. Mattel, Inc.*, No. 11-cv-01063, 2011 WL

---

[8] On July 12, 2024, HATCI filed a motion for reconsideration in the HATCI Matter, asking the court to reconsider its ruling on "whether HATCI engaged in 'characterization testing' prohibited by the parties material transfer agreement." *See HATCI Matter*, Dkt. 164 at 1. That motion is set for a September 25, 2024 hearing. *See id.*, Dkt. 167. Thus, contrary to what Soelect contends, the issue of "whether HMC's prohibited testing was wrongful" has not been fully "resolved" in the HATCI Matter. *See* Dkt. 39 at 5-6.

5007955, at *4 n.2 (C.D. Cal. Oct. 20, 2011) (for analogous res judicata doctrine, a "difference in elements between the claims in two suits is [] irrelevant").

Soelect contends that "no rights are infringed by the adjudication of either case." Dkt. 31 at 11. But whether this Court's *adjudication* of Soelect's claim infringes rights is not what matters; the claim splitting doctrine looks to "whether the two suits involve infringement of the same right." *Adams*, 487 F.3d at 689. Here, they do—namely, the alleged infringement of intellectual property rights in Soelect's ostensibly proprietary technology. Dkt. 24 at 13.

Soelect asserts that "a breach of contract claim and a tort" claim cannot share the same "operative nucleus of fact." Dkt. 31 at 11-12. But settled law holds otherwise. *See, e.g.*, *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523 (9th Cir. 1989) ("claims in contract and tort" "unquestionably arose from a 'common nucleus of operative fact'"); *iSpot.tv, Inc. v. Teyfukova*, No. 2:21-CV-06815, 2023 WL 1967958, at *7 (C.D. Cal. Jan. 25, 2023) (contract and DTSA claim arose from "common nucleus of operative fact"). Regardless, the relevant inquiry is not whether "different legal theories" are asserted, but whether the facts overlap. *E.g.*, *Estrada*, 2008 WL 3286112, at *2 (finding improper claim splitting). Here, they do. *See* Dkt. 24 at 11-14; *see also Adams*, 487 F.3d 690 (affirming dismissal on claim splitting grounds of second case with "new legal theories"); *Pollok v. Vanguard Mktg.*, No. 18-cv-1099, 2018 WL 6118602, at *3 (C.D. Cal. May 29, 2018) (finding improper claim splitting even though the two cases presented "different legal theories").

Soelect also incorrectly argues that HMC and HATCI are not in privity. Dkt. 31 at 12.[9] As HMC explained, HMC and HATCI are privies for purposes of the claim splitting doctrine. *See* Dkt. 24 at 14; *Pollok*, 2018 WL 6118602, at *4 ("Privity [] exists for purposes of preclusion between a parent corporation and its wholly-owned subsidiary."); *see also Hueter v. Kruse*, No. 21-cv-00415, 2021 WL 5238763, at *7 (D. Haw. Nov. 10, 2021) ("[E]ven when the defendants

---

[9] Soelect does not argue the first factor of the privity test, effectively conceding that HMC and HATCI's "interests … are aligned." *Mendoza*, 30 F.4th at 887–88; *see* Dkt. 31 at 12. Soelect also contends that HMC has "thwarted [its] efforts to get deposition discovery from it at every turn" (Dkt. 31 at 12), but the HMC witnesses about which Soelect complains have been offered for deposition (*see* Ex. I).

1  in each suit are not identical, a court may dismiss a second suit … as duplicative."). Also, Soelect's
2  argument that HMC and HATCI are not privies cannot be squared with its assertion that, for
3  personal jurisdiction purposes, HMC and HATCI should be considered the same. Dkt. 40 at 2.[10]

### IV. SOELECT'S DTSA CLAIM FAILS ON THE MERITS FOR LACK OF A DOMESTIC "ACT IN FURTHERANCE" OF THE ALLEGED MISAPPROPRIATION

Soelect's DTSA claim fails on the merits because the Complaint does not allege an "act in furtherance" of the alleged misappropriation "committed in the United States." 18 U.S.C. § 1837; Dkt. 24 at 15. As HMC explained (Dkt. 24 at 15), "[n]owhere does [Soelect's] Complaint detail any act that occurred in the United States *in furtherance of the [alleged] misappropriation of trade secrets.*" *Beijing Neu Cloud Oriental v. IBM*, No. 21-cv-7589, 2022 WL 889145, *3-4 (S.D.N.Y. Mar. 25, 2022) (granting motion to dismiss for lack of a domestic "act in furtherance"); *see Aldini*, 2022 WL 20016826, *14-15 (dismissing "impermissibly extraterritorial" DTSA claim); *ProV Int'l v. Lucca*, No. 8:19-cv-978, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) (dismissing DTSA claim where complaint failed to connect domestic activity with the alleged misappropriation).

Soelect argues the "negotiat[ion] and execut[ion]" of the MTA "within the United States" and communications relating to the MTA satisfy the DTSA's requirement for a domestic act in furtherance of HMC's alleged misappropriation. Dkt. 31 at 12-13. But all of the acts Soelect identifies relate to the negotiation and execution of the MTA and thus were performed by CRADLE; none of the acts Soelect identifies were performed by HMC. And negotiating and executing a contract is not, absent some alleged scheme or conspiracy, an act in furtherance of misappropriation. *See Bepex Int'l v. Micron BV*, No. 19-cv-2997, 2023 WL 2975699, at *5, *7 (D. Minn. Apr. 17, 2023) (explaining that "an act that occurs before the [allegedly wrongful] operation is underway"—like the MTA's negotiations, which occurred nearly a year before HMC's alleged misappropriation—"is not an act in furtherance of the misappropriation").

---

[10] If this case is not dismissed because it violates the claim splitting doctrine, it should be stayed under that doctrine, including for reasons articulated in HMC's concurrent motion to stay. *See Anguiano-Tamayo v. Wal-Mart Assocs., Inc.*, No. 18-cv-04598, 2019 WL 359417, at *8 (N.D. Cal. Jan. 29, 2019) (staying suit under the claim splitting doctrine); Dkt. 26.

The sole case Soelect relies on—*Medcenter Holdings v. WebMD Health*, No. 1:20-cv-00053, 2021 WL 1178129 (S.D.N.Y. Mar. 29, 2021)—is inapposite. In *Medcenter*, the court denied a motion to dismiss a DTSA claim for lack of a domestic act in furtherance because "the complaint alleged sufficient facts to suggest that the defendant's negotiation of an agreement in the U.S. was a 'Trojan Horse' to learn about the plaintiff's proprietary information" and "a ploy to misappropriate trade secrets." *Bepex*, 2023 WL 2975699, at *7 (discussing and distinguishing *Medcenter*). Here, Soelect does not allege—and cannot plausibly allege—that when CRADLE negotiated the MTA in 2019, HMC possessed "specific intent" to misappropriate Soelect's alleged trade secrets nearly a year later. *Id.* Thus, this case "stand[s] in stark contrast" to *Medcenter*. *Id.*

## V.  CONCLUSION

Soelect's complaint is improperly duplicative, has nothing to do with this District or California, lacks a viable domestic hook, and should be dismissed, without leave to amend.[11]

---

[11] Soelect should not be granted leave to amend to allege, for example, more about communications leading to Soelect's decision to ship samples to HMC in South Korea. *See* Dkt. 31 at 13. That is no more than a reference to the MTA's negotiation by another name. "[D]istrict courts are only required to grant leave to amend if a complaint can possibly be saved." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). Here, no amendments can save Soelect's complaint.

Dated:  August 14, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

 /s/ *Matthew W. Walch*
Matthew W. Walch (*Pro Hac Vice*)
  matthew.walch@lw.com
Gary Feinerman (*Pro Hac Vice*)
  gary.feinerman@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700

Douglas E. Lumish (SBN 183863)
  doug.lumish@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600

Christopher W. Henry (*Pro Hac Vice*)
  christopher.henry@lw.com
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 948-6000

Melanie J. Grindle (SBN 311047)
  melanie.grindle@lw.com
12670 High Bluff Drive
San Diego, California 92130
Telephone: (858) 523-5400

*Attorneys for Defendant Hyundai Motor Company*