<div style="vertical writing">United States District Court
Northern District of California</div>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOELECT, INC., | Case No. 23-cv-05405-CRB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| HYUNDAI MOTOR COMPANY, | |
| Defendant. | |

In this case, Soelect, Inc., a battery company, has sued Hyundai Motor Co. (HMC), a car company, alleging that HMC stole Soelect's trade secrets in violation of the Defend Trade Secrets Act (DTSA).  See Compl. (dkt. 1) ¶¶ 1, 4, 11, 15.  HMC now brings two motions: a motion to dismiss, and an alternative motion to stay.  See MTD (dkt. 24); MTS (dkt. 26).  Because the Court grants the motion to dismiss, it does not reach the motion to stay.

## I.    BACKGROUND

### A.    The Relevant Players

Soelect is a Delaware corporation with a principal place of business in North Carolina.  Compl. ¶ 16.  Soelect "develops revolutionary lithium anode battery technology for rechargeable lithium batteries for high energy applications, such as electric vehicles." Id. ¶ 4.  HMC is a South Korean car company with a principal place of business in South Korea.  Id. ¶ 17.  HMC's subsidiary, HATCHI—not a party in this case—is a Michigan corporation with a principal place of business in Michigan.  See Walch Decl. Ex. A (dkt. 24-3) (HATCHI Compl.) ¶ 3.  HATCHI has an office in Santa Clara County, known as the CRADLE office.  Compl. ¶ 19; MTD at 5 n.6.

1
2
3
4
5
6
7
8
9
10
11

United States District Court
Northern District of California

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.     The Dispute**

"Lithium Metal Batteries have been called the 'Holy Grail' of battery technology," because they have the potential to "dramatically extend the range of electric automobiles, and even power electric aircraft."  Compl. ¶ 4.  But lithium tends "to grow dendrites— microscopic branch-like growths of metal," which "[w]hen present in a battery . . . can grow long enough to short circuit the battery's two electrodes, potentially causing a fire or explosion."  Id. ¶ 5.  And so "substantial efforts" have been undertaken to "mitigate or prevent dendrite growth in Lithium Metal Batteries."  Id. ¶ 6.  Soelect claims to have developed a "revolutionary" technologies that does "just that."  Id. ¶ 7.  Because successful lithium metal batteries could expand the mileage range for electric vehicles and make them safer, electric vehicle companies are interested in Soelect's products.  Id.

In February of 2019, a representative from HATCHI approached Soelect regarding Soelect's "Lithium-X Anode product."  Id. ¶ 25.  The parties entered into a non-disclosure agreement that prevented HMC and HATCHI from using information about Soelect's products.  Id. ¶ 26.  "HATCI also assured Soelect that HMC was not Soelect's competitor and that it did not intend to develop or manufacture its own lithium metal battery components."  Id. ¶ 27.  Soelect and HATCHI spent several months negotiating HMC's testing of Soelect's product.  Id. ¶ 28.

In September of 2019, Soelect and HATCHI entered into the Materials Transfer and Testing Agreement (MTA), which directed Soelect to send materials to HMC at HMC's Uiwang Future Energy Research facility in South Korea.  Id. ¶ 29.  The MTA forbade HMC and HATCHI "from, among other things, 'attempt[ing] to determine the composition or structure of [Soelect's] Proprietary Material' and 'perform[ing] any characterization testing including . . . scanning electron microscopy [SEM].'"  Id. ¶ 30.  The MTA anticipated that the project would take place between September and November of 2019, but allowed for the parties to alter the timeline.  Id. ¶ 31.

Soelect sent samples of its batteries to HMC for testing.  Id. ¶ 32.  The parties agreed several times to additional rounds of testing.  Id. ¶¶ 33, 36.  On October 27, 2020—

2

over a year after entering into the MTA—HMC sent to Soelect's CEO the results of HMC's September 2020 testing. Id. ¶¶ 9, 11, 37. That testing showed images that Soelect contends HMC could only have generated "by scanning electron microscopy, a type of testing expressly forbidden by the MTA" because "it can be used to determine the composition and structure of Soelect's products and reverse engineer those products." Id. ¶¶ 38, 39. Soelect notified HMC and HATCHI that they had breached the MTA. Id. ¶ 40. HMC and its subsidiaries "repeatedly told Soelect that they did not reverse engineer Soelect's products" and would not do so. Id. ¶ 43. However, on October 4, 2023, "a Korean newspaper reported that HMC was going to begin developing and manufacturing its own lithium metal battery anodes—products similar to those that Soelect manufactures." Id. ¶ 46. The article mentioned that the batteries were going to be developed at the Uiwang facility, the same facility where Soelect had shipped its samples, and that Soelect was working with HMC. Id. ¶¶ 47, 48.

### C. Procedural History

#### 1. HATCHI Case

In March of 2022, Soelect filed a one-count complaint in the Northern District of Illinois against HATCHI. See HATCHI Compl. In that case, Soelect alleged that HATCHI breached the MTA because it "allowed its affiliate [HMC] to conduct testing barred by" the MTA. Id. ¶ 15. Soelect alleged that it was entitled to $10,000,000.00 in liquidated damages. Id. ¶¶ 17, 18. On June 10, 2024, Judge Jeremy C. Daniel granted partial summary judgment in Soelect's favor, holding among other things that "there is no genuine dispute that HATCHI breached the MTA by allowing [prohibited] testing to be performed on Lithium-X samples." Opp'n to MTS (dkt. 39) at 1 (quoting Soelect, Inc. v. Hyundai Am. Tech. Ctr., Inc., No. 22 CV 1342, 2024 WL 2892905, at *13 (N.D. Ill. June 10, 2024) (HATCHI MSJ Order)). Judge Daniel held, however, that the parties disputed "whether the $10 million stipulated sum is a reasonable estimate of the amount of loss that would probably be sustained in the event of a breach," which "preclude[d] granting summary judgment in either party's favor" as to the liquidated damages. HATCHI MSJ

United States District Court
Northern District of California

1    Order at *15.  Trial is set in the HATCHI matter for November 18, 2024.  <u>See</u> Reply re

2    MTS (dkt. 44) at 2.  The parties here disagree about whether the only issue in that trial is

3    the enforceability of the liquidated damages clause.  <u>Compare</u> MTS Opp'n at 3 ("The only

4    issue that remains in that case is the enforceability of the liquidated damages clause in the

5    contract between HATCHI and Soelect.") <u>with</u> Reply re MTS at 3 ("in the HATCHI

6    Matter, [Soelect] has flatly refused to agree that actual damages are unavailable. . . .

7    Whether Soelect is entitled to actual damages in the HATCHI Matter implicates evidence

8    and issues relating to, at least, (i) the value of Soelect's allegedly proprietary technology,

9    (ii) the performance of the Soelect samples at the heart of Soelect's claims in the HATCHI

10   Matter and here, and (iii) the impact (if any) that HMC's evaluation of such samples had

11   on Soelect.").  In the meantime, HATCHI has moved for reconsideration of the court's

12   MSJ ruling, which is set for a hearing on September 25, 2024.  Reply re MTS at 4–5.

13                    **2.       This Case**

14            Soelect brought this case on October 20, 2023.  <u>See</u> Compl.  The complaint alleges

15   that HMC violated the DTSA by misappropriating Soelect's trade secrets.  <u>Id.</u> ¶¶ 51–60.

16   The parties stipulated to stay this case until 30 days after the HATCHI summary judgment

17   decision.  <u>See</u> Stipulation (dkt. 34).  Two motions are now pending: HMC's motion to

18   dismiss, and HMC's motion to stay the case until after the HATCHI trial.  <u>See</u> MTD;

19   Opp'n to MTD (dkt. 31); Supp. Opp'n to MTD (dkt. 40); Reply re MTD (dkt. 43); MTS;

20   Opp'n to MTS; Reply re MTS.  The Court held a motion hearing on Friday, September 20,

21   2024, and took the matter under submission.  Motion Hearing (dkt. 51).  The Court now

22   addresses the motion to dismiss.

23   **II.    LEGAL STANDARD**

24            HMC brings its motion to dismiss pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6)

25   of the Federal Rules of Civil Procedure

26            Under Rule 12(b)(2), a party may move to dismiss a complaint for lack of personal

27   jurisdiction.  "When a district court acts on a defendant's motion to dismiss under Rule

28   12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie

                                        4

showing of jurisdictional facts to withstand the motion to dismiss." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). A prima facie showing is established if the plaintiff produces admissible evidence that, if believed, would be sufficient to establish personal jurisdiction. See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d. 1122, 1129 (9th Cir. 2003). "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010). However, "bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007). Additionally, conclusory allegations or "formulaic recitation of the elements" are not entitled to the presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). "Nor is the court required to accept as true allegations that are . . . unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

In assessing whether personal jurisdiction exists, the court is not limited to a plaintiff's complaint and may consider evidence presented in affidavits or order discovery on jurisdictional issues. Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). Although all uncontroverted allegations are taken as true, a court may not "assume the truth of allegations in a pleading which are contradicted by affidavit."[1] Id. at 1284.

Under Rule 12(b)(3), a party may assert the defense of improper venue. "The plaintiff bears the burden of showing that venue is proper." Johnson v. Ford Motor Co., No. 23-cv-1375-PCP, 2023 WL 8654930, at *1 (N.D. Cal. Dec. 14, 2023). "In ruling on a motion to dismiss for improper venue, the Court need not accept the allegations in the complaint as true and may consider evidence outside of the pleadings." Id. (citing eBay

---

[1] Declarations and affidavits are functional equivalents in this context. See LNS Enters. LLC v. Cont'l Motors, Inc., 22 F.4th 852, 858 (9th Cir. 2022) (citing 28 U.S.C. § 1746).

United States District Court
Northern District of California

Inc. v. Digit. Point Sols., Inc., 608 F. Supp. 2d 1156, 1161 (N.D. Cal. 2009)).

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted.  The Court may base dismissal on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up).  A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (cleaned up).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion. Id. (citing Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)).  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. Proc. 15(a)(2).  A court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

In its motion to dismiss, HMC argues that (A) the Court lacks personal jurisdiction over HMC; (B) this district is an improper venue; (C) the DTSA claim fails for lack of a

domestic act; and (D) the anti-claim splitting doctrine bars this suit.  See MTD.[2]

### A.    Personal Jurisdiction

HMC first argues that the Court lacks personal jurisdiction over it.  MTD at 4–9.

Personal jurisdiction can be either general or specific, see Bristol-Myers Squibb Co. v.

Sup. Ct. Cal., San Francisco Cty., 582 U.S. 255, 262 (2017), but here Soelect only asserts

specific jurisdiction, see Opp'n to MTD at 3–9.  The Ninth Circuit has "established a

three-prong test for analyzing a claim of specific personal jurisdiction."  Schwarzenegger

v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  In particular:

> (1) The non-resident defendant must purposefully direct his
> activities or consummate some transaction with the forum or
> resident thereof; or perform some act by which he purposefully
> avails himself of the privilege of conducting activities in the
> forum, thereby invoking the benefits and protections of its
> laws;
> (2) the claim must be one which arises out of or relates to the
> defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e., it must be reasonable.

Id. (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)) (emphasis added).  "The

plaintiff bears the burden on the first two prongs," and once those are established, the

defendant must show a "'compelling case' that the exercise of jurisdiction would not be

reasonable."  Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 983 (9th Cir. 2021) (quoting

Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting Schwarzenegger, 374

F.3d at 802)).  "If any of the three requirements is not satisfied, jurisdiction in the forum

would deprive the defendant of due process of law."  Omeluk v. Langsten Slip &

Batbyggeri A/S, 52 F.3d 267, 270–71 (9th Cir. 1995) (adding that court did not analyze

reasonableness requirement where first two requirements were not met).

This order will address (1) the "purposeful direction" prong; (2) the "arises out of"

prong; (3) the "reasonableness" prong; as well as (4) Soelect's request for jurisdictional

discovery.

---

[2] The Court does not reach HMC's anti-claim splitting argument.

### 1.    Purposeful Direction

For "suits sounding in tort," the Ninth Circuit generally applies the "purposeful direction analysis." AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1208 (9th Cir. 2020) (quotation omitted); see also Davis v. Cranfield Aerospace Sols., Ltd., 71 F.4th 1154, 1162 (9th Cir. 2023) (recognizing that there is not a "rigid dividing line" between purposeful availment and purposeful direction) (internal quotation marks omitted), cert. denied, 144 S. Ct. 826 (2024).

Purposeful direction, or the "effects test," requires that a defendant have "[a] committed an intentional act, [b] expressly aimed at the forum state, [c] causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803 (citing Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)).

### a.    Intentional Act by the Defendant

The first part of the purposeful direction test is whether HMC has committed an intentional act. See id. To satisfy the intentional act prong, "the defendant must act with the 'intent to perform an actual, physical act in the real world.'" Picot v. Weston, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting Schwarzenegger, 374 F.3d at 806). "The threshold of what constitutes an intentional act is relatively low." AirWair Int'l Ltd. v. Schultz, 73 F. Supp. 3d 1125, 1233 (N.D. Cal. 2014). HMC does not challenge the intentional act element, for good reason—HMC's testing of Soelect's product samples is an intentional act.

### b.    Express Aiming

The second part of the purposeful direction test turns on whether HMC "expressly aimed" its intentional acts at the forum. See Schwarzenegger, 374 F.3d at 802.

### i.    The Law on Express Aiming

The express aiming inquiry centers on whether the defendant specifically targeted the forum state. See Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1143 (9th Cir. 2017) (citing Walden, 571 U.S. at 284). The Supreme Court has explained that the contacts supporting purposeful direction "must be the defendant's own choice and not [be]

'random, isolated, or fortuitous.'" Ford Motor Co., 592 U.S. at 359 (quoting Keeton, 465 U.S. at 774). The defendant must have "reached out beyond its home—by, for example, exploiting a market in the forum state." Id. (quotations and alterations omitted). Therefore, a defendant does not purposefully direct its activities at the forum state when the unilateral activity of the plaintiff or a third party is all that connects the defendant to the forum state. See Walden, 571 U.S. at 284–85 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–92, (1980)). Rather, the focus is on the defendant's "own contacts," i.e., "contacts that the 'defendant' himself creates with the forum state." See id. at 284 (emphasis in original) (internal quotations omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)); see also Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1070 (9th Cir. 2017) ("The Court made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum.") (quoting Walden, 571 U.S. at 289).

Nor does a defendant purposefully direct its activities at the forum state merely by directing those activities at a person who happens to reside in the forum state, even if the defendant knows that the person resides there. See Walden, 571 U.S. at 285. Instead, "it is the defendant's conduct that must form the necessary connection with the forum State." Id. In Calder v. Jones, 465 U.S. 783, 790 (1984), the Supreme Court "made clear that mere injury to a forum resident is not a sufficient connection to the forum." Walden, 571 U.S. at 290. "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." Id. Thus, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id.

Courts are to focus on the defendant's actual contacts with the forum, and the "quality and nature" of those activities. See Hanson v. Denckla, 357 U.S. 235, 253 (1958).

### ii.      Express Aiming Analysis

HMC argues that there are only two sets of allegations in the complaint "that even

arguably posit connections between HMC and California": (1) an October 27, 2020 Zoom meeting attended by "Hyundai personnel from the United States and Korea," and (2) the negotiations between HATCHI and Soelect over the MTA.  MTD at 5.  HMC argues that neither set of allegations shows express aiming at California.  Id.

As to (1) the October 27, 2020 Zoom meeting in which "Hyundai presented slides showing scanning electron microscope images of the Soelect samples, in contravention of the MTA," Compl. ¶ 2, that meeting does not represent express aiming at California. Because the meeting occurred after the SEM imaging at the center of this case, there is no possibility that "any confidential information was misappropriated" at that meeting.  See E*Healthline.com, Inc. v. Pharmaniaga Berhad, No. 2:18-cv-01069-MCE-EFB, 2018 WL 5296291, at *5 (E.D. Cal. Oct. 23, 2018).  Indeed, it was at that meeting that "Hyundai personnel" disclosed to Soelect that it had done the imaging that Soelect alleges "can be used to . . . reverse engineer [Soelect's] products."  Compl. ¶¶ 2, 39.  Nor does participation in a Zoom meeting confer jurisdiction in any case.  First, the HMC employees apparently joined the Zoom from South Korea.  See Seo Decl. (dkt. 24-10) ¶ 2 ("I attended this virtual meeting from South Korea, as did all other attendees from HMC.").  And second, "ordinary use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protections of the [forum] state."  Serenium, Inc. v. Zhou, No. 20-cv-02132-BLF, 2021 WL 3111758, at *4 (N.D. Cal. July 22, 2021) (quoting Medimpact Healthcare Sys., Inc. v. Iqvia Holdings, Inc., No. 19-cv-1865-GLC (LL), 2020 WL 1433327, at *8 (S.D. Cal. March 24, 2020) (quoting Roth v. Garcia Marquez, 942 F.2d 617, 622 (9th Cir. 1991))).  In its opposition brief, Soelect does not even rely on the October 27, 2020 Zoom meeting for express aiming.  See Opp'n to MTD at 6–7.

As to (2) the negotiations between HATCHI and Soelect over the MTA, there are two reasons that it does not evidence express aiming.

First, it was HATCHI, a Michigan company with an office in California, who negotiated the MTA with Soelect, not HMC.  See Compl. ¶¶ 28–29.  "The existence of a

parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015).  "As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." Id.; see also Opp'n to MTD at 5 (agreeing).  That veil can be pierced under limited circumstances. Historically, "this circuit permitted a plaintiff to pierce the corporate veil for jurisdictional purposes and attribute a local entity's contacts to its out-of-state affiliate under one of two separate tests"—the agency test and the alter ego test.  Ranza, 793 F.3d at 1071.

Soelect does not assert that the alter ego test applies and instead relies entirely on the agency test.  See Opp'n to MTD at 5.  But the agency test might no longer be valid. See Ranza, 793 F.3d at 1071 (explaining that because the agency test "stacks the deck" in favor of jurisdiction, "[t]he Supreme Court invalidated this test" in Daimler AG v. Bauman, 571 U.S. 117 (2014)[3]); Williams v. Yamaha Motor Co. Ltd., 851 F.3d 1015, 1024 (9th Cir. 2017) ("Notwithstanding Daimler's express reservation on the question of agency theory's application to specific jurisdiction, more than one district court within our circuit has expressed some uncertainty on that point post-Daimler, as 'the rationale set forth in Daimler . . . would seem to undermine application of [our agency test] even in specific jurisdiction cases.'"; "Daimler's reasoning is clearly irreconcilable with the agency test set forth in Unocal."); MSP Recovery Claims v. Actelion Pharm. US, Inc., No. 3:22-cv-07604-JSC, 2024 WL 3408221, at *4 (N.D. Cal. 2024) ("the Ninth Circuit has . . . rejected the agency test in the context of specific personal jurisdiction.").

Even if the agency test is still valid, see Williams, 851 F.3d at 1024 (assuming in the alternative that "some standard of agency" was relevant), Soelect has not sufficiently demonstrated an agency relationship here.  Soelect assigns significant weight to

---

[3] To be clear, the Supreme Court added that "Agency relationships . . . may be relevant to the existence of specific jurisdiction. . . . a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." Id. at 135 n.13.

HATCHI's general counsel's statement that "[HMC], not HATCHI, directs Hyundai CRADLE's projects and business activities."  Opp'n to MTD at 5 (citing Opp'n to MTD Ex. A (dkt. 31-2) ¶ 4).[4]  But that statement does not demonstrate that HMC exercises "higher than normal oversight" over HATCHI, akin to control over "day-to-day operations."  See Sunderland v. Pharmacare U.S., Inc., No. 23-cv-1318-JES (AHG), 2024 WL 2116069, at *4 (S.D. Cal. May 10, 2024) (holding that if agency theory persists after Daimler, it requires "substantial control," which is "a showing higher than 'normal oversight of a parent over a subsidiary' and more akin to 'control of day-to-day operations.'") (quoting In re Cal. Gasoline Spot Mkt. Antitrust Litig., No. 20-cv-03131-JSC, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021)).

Moreover, a declaration from HMC's Chaeyeol Lee specifically states that HMC does not exercise that kind of control over HATCHI.  See Lee Decl. (dkt. 24-11) ¶¶ 6 ("HMC and HATCHI are separate and distinct corporate entities, and observe corporate formalities"), 7 ("HMC and HATCHI are led by distinct and non-overlapping individuals"), 8 ("HATCHI maintains its own bank accounts, financial records, and corporate records, separate from HMC"), 9 ("HMC does not control HATCHI's day-to-day operations.").  Soelect argues (and insinuated at the motion hearing) that the Lee declaration and the general counsel statement are in conflict, in which case "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  MTD Opp'n at 6 (quoting Schwarzenegger, 374 F.3d at 800).  But the statements are not in conflict—the Court understands them to say that HMC directs the projects that HATCHI works on, but HATCHI is its own independent entity.  See HDT Bio Corp. v. Emcure Pharm., Ltd., No. C22-0334JLR, 2023 WL 9094355, at *11 (W.D. Wash. Dec. 4, 2023) ("shap[ing] [] broader business objectives" and "broader strategic planning" "insufficient to establish an agency relationship for purposes of specific jurisdiction.").[5]

---

[4] At the motion hearing, Soelect's counsel provided additional context for this declaration, explaining that the magistrate judge in the Northern District of Illinois had directed HATCHI to file it in light of HATCHI's professed inability to produce certain materials.
[5] To the extent that Soelect suggests that the HATCHI MSJ Order supports an agency

United States District Court
Northern District of California

Second, even if HATCHI's act of entering into the MTA with Soelect could be imputed to HMC, that act alone does not demonstrate express aiming by HMC into California. HATCHI and Soelect negotiated the MTA "in part" in California. See Compl. ¶ 19. But HMC is a South Korean company, HATCHI is a Michigan company, Soelect is a North Carolina company, and the relevant testing occurred when Soelect shipped samples (presumably from North Carolina) to HMC in South Korea. That the MTA itself was negotiated "in part" in California seems rather incidental.[6] See Ford Motor Co., 592 U.S. at 359 (contacts cannot be "random, isolated, or fortuitous."). A party entering into "a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State" can certainly be sufficient for a forum state court to exercise jurisdiction over the party. See Walden, 571 U.S. at 285. But here, there was "no contemplation that California would play a role in any of" the resulting conduct between the parties. See E*Healthline.com, 2018 WL 5296291, at *5; see also Picot v. Weston, 780 F.3d 1206, 1213 (9th Cir. 2015) (no jurisdiction over Michigan-based defendant who took two trips to California "to develop and market the technology" but undertook tasks agreed to in the contract in Michigan); Serenium, 2021 WL 3111758, at *1, 4 (even where plaintiff was based in California, and parties had frequent communication, where contract was for defendant to develop products in Japan, South Korea, China, and Taiwan, there was no jurisdiction over defendant in California).

Moreover, as HMC points out, "express aiming 'depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue," and a defendant must have "'expressly aimed its tortious conduct at the forum.'" MTD at 7–8 (quoting

---

relationship, see MTD Supp. Opp'n at 2 ("the court notes that the MTA 'contemplates an express delegation of HATCHI's obligations to the HMC scientists who actually received and tested the materials'") (quoting HATCHI MSJ Order at *12), it does not. Judge Daniel was addressing HATCHI's argument that it was not liable for testing done by HMC because the contract did not list HMC as a recipient of the product samples. See HATCHI MSJ Order at *10–12. That the MTA anticipated that HMC would be testing the samples does not mean that HATCHI was HMC's agent for the purposes of specific jurisdiction.

[6] Moreover, the MTA is governed by North Carolina law and sets Illinois as the venue. See Compl. Ex. B (dkt. 1-2) (MTA) at 1, 3, 5.

13

E*Healthline.com, 2020 WL 5495284, at *4; Alexandria Real Estate Equities, Inc. v. RUNLABS (UK) Ltd., No. 18-cv-07517-LHK, 2019 WL 4221590, at *13 (N.D. Cal. Sept. 5, 2019)).  Indeed, in E*Healthline.com, 2020 WL 5495284, at *5, the court held that an allegation that a defendant misappropriated confidential information through an employee located in the forum was insufficient because the allegation "fail[ed] to demonstrate that [that employee] performed any specific act on behalf of [the defendant], let alone an act related to the misappropriation of plaintiff's confidential information."  Here, while Soelect alleges that HMC negotiated the MTA through HATCHI in this forum, it does not allege either that HMC/HATCHI engaged in any wrongdoing in the course of the contracting process, or that any misappropriation took place in California.  Aiming non-tortious conduct at the forum is insufficient.  See Picot, 780 F.3d at 1214.[7]

Soelect adds a third potential basis for express aiming: that HMC at one point "invited Soelect into the forum to discuss business opportunities."  Opp'n to MTD at 7 (citing Ex. B (dkt. 31-3) (Email Chain)).  But a single invitation to California is not enough to demonstrate express aiming.  See Picot, 780 F.3d at 1213 (no jurisdiction despite two trips to California).  Moreover, the invitation came after the parties had entered into the MTA.  Compare Email Chain (with dates ranging between October 21, 2019 and November 5, 2019) with MTA at 3 (signed September 1, 2019 and September 24, 2019).  And the invitation had nothing to do with the MTA or even with the parties' specific relationship.  See Email Chain at 4 (invitation was to a "Mobility Innovators Forum").  Soelect does not allege that the invitation is evidence of misappropriation of Soelect's trade secrets.  See E*Healthline.com, 2020 WL 5495284, at *4; see also Pray, Inc. v. Christian Care Ministry, Inc., No. 2:23-cv-10660, 2024 WL 1680053, at *5 (C.D. Cal.

---

[7] The opposition responds that "The hook that HMC used to reel in Soelect's proprietary materials—the MTA contract—was negotiated in California."  MTD Opp'n at 6; see also id. at 5 ("The genesis of HMC's theft was a contract negotiated by the CRADLE office of HMC's subsidiary CRADLE in California—an intentional act aimed at California.").  But this is an entirely new spin—the complaint does not allege that HATCHI negotiated the MTA in order to trick Soelect into sharing its trade secrets so that, one year later, HMC could steal them.

Apr. 5, 2024) (allegation of "three meetings in California" that "provides little detail about the content of these meetings," absent "other allegations linking [defendant's executives] to California" was insufficient for personal jurisdiction); Hempel v. Cydan Dev., Inc., No. 3:13-cv-00008-MMD-CBC, 2018 WL 5777491 (D. Nev. Nov. 2, 2018) (visit to Nevada did not support personal jurisdiction where it was "not challenged conduct nor [was] it integral to any of" the claims). Nor does Soelect even allege that it accepted the invitation.[8]

Because Soelect fails to identify sufficient contacts that HMC itself created with California, Soelect has failed to show express aiming. See Walden, 571 U.S. at 284.

### c. Harm

The third part of the purposeful direction test is whether HMC knew that its intentional act would cause harm in the forum. See Schwarzenegger, 374 F.3d at 803. The focus of the inquiry "is not the magnitude of the harm, but rather its foreseeability." Lindora, LLC v. Isagenix Int'l, LLC, 198 F.Supp.3d 1127, 1141 (S.D. Cal. 2016). For jurisdictional purposes, a corporation incurs economic loss in the forum of its principal place of business. See CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011). "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006).

HMC argues that Soelect "'does not allege that [HMC] injured [it] in California.'" See MTD at 8 (quoting Kovalenko v. Kirkland & Ellis LLP, No. 22-cv-05990-HSG, 2023 WL 5444728, at *14 (N.D. Cal. Aug. 23, 2023)). That is correct. Soelect, a Delaware corporation with its principal place of business in North Carolina, see Compl. ¶ 16, alleges

---

[8] Also, the HATCHI MSJ Order's language about the MTA "contemplat[ing] an express delegation of HATCHI's obligations to the HMC scientists who actually received and tested the materials," which Soelect characterizes as a delegation of "performance from California to South Korea," does not accomplish what Soelect wishes. See MTD Supp. Opp'n at 2. If anything, it suggests that HMC's conduct was aimed away from California.

United States District Court
Northern District of California

1  only that "Soelect has suffered harm as a direct and proximate result of HMC's use and

2  disclosure of Soelect's trade secrets, and . . . HMC has gained, both financially and

3  reputationally, as a market leader in the lithium metal anode area, from this use or

4  disclosure," id. ¶ 59.  In Kovalenko, 2023 WL 5444728, at *14, where the plaintiff did not

5  live in California, worked in several other states, and only intended to relocate to

6  California, Judge Gilliam held that the plaintiff failed to allege that the defendant injured

7  the plaintiff in California, and so had failed to allege forum-state harm.  Soelect similarly

8  fails to allege any forum-state harm here.

9      In response, Soelect argues that "where intellectual property is stolen, a projected

10  negative effect on the marketplace in a state is sufficient to demonstrate harm is likely to

11  occur in the forum."  Opp'n to MTD at 7.  Soelect cites in support of that point DFSB

12  Kollective Co. v. Bourne, 897 F. Supp. 2d 871, 885 (N.D. Cal. 2012), a copyright case in

13  which Judge Hamilton held that the plaintiff, who was not a California resident, had

14  adequately alleged harm in California because it had alleged that "by offering unauthorized

15  copies of Plaintiffs' works, Defendant has affected Plaintiffs' large California market by

16  'decreasing the volume of sales and corresponding revenue there appreciably.'"  See

17  Opp'n to MTD at 7 (emphasis added).  Soelect argues that "California is one of the largest

18  electric vehicle marketplaces in the United States" and that because HMC stole its battery

19  technology, Soelect has a decreased ability to participate in the electric vehicle

20  marketplace.  Id. (citing https://cleantechnica.com/2024/02/22/california-rises-to-21-4-bev-

21  market-share-33-8-of-us-bev-market/, which does not mention Hyundai or Soelect).

22      This is unpersuasive.  As an initial matter, this theory of harm is attenuated: Soelect

23  makes batteries, batteries are important for electric vehicles, there is a big market for

24  electric vehicles in California, therefore Soelect was harmed by not being able to

25  participate in the California car market.[9]  It is also nowhere in the complaint, which

26

27  ─────────────────────
    [9] It is also unclear why the issue is Soelect's ability to participate in California's electric
    car market and not its ability to participate in California's HMC electric car market.

28  Presumably HMC sells electric cars in California, but the Court has seen nothing about
    that in the complaint or elsewhere in the parties' briefing.

United States District Court
Northern District of California

touches only on how important effective lithium metal batteries are to the "multi-billion-dollar electric vehicle marketplace." See Compl. ¶¶ 4–7.  If the Court's focus is foreseeability, then the complaint does not plead foreseeable harm in California.  See Lindora, 198 F.Supp.3d at 1141.  Soelect insists that its inability to participate in California's electric vehicle market because of HMC's misappropriation "is a forum-specific harm unique to California."  Opp'n to MTD at 7.  But it does not feel "unique to California"—by that reasoning, Soelect could argue that it suffered harm everywhere electric vehicles are sold.  As to California specifically, unlike in DFSB, where the plaintiff already had a "large California market," which the defendant impacted by offering unauthorized copies of the plaintiffs' works, see DFSB Kollective, 897 F. Supp. 2d at 885, Soelect apparently has no California market, see Statement of Undisputed Material Facts in HATCHI Matter (No. 22-cv-01342 in N.D. Ill.) (dkt. 138) ("Soelect admits that it is not selling its products commercially yet, but that is immaterial to this dispute.").  Accordingly, the standard rule applies: a corporation incurs economic loss in the forum of its principal place of business—here, North Carolina.  See CollegeSource, 653 F.3d at 1079.

Soelect has therefore failed to allege forum-specific harm.

Because Soelect failed to show express aiming at California, and failed to allege harm suffered in California, Soelect has failed the "purposeful direction" prong.  Soelect has therefore failed to satisfy the three-prong test for specific personal jurisdiction.  See Schwarzenegger, 374 F.3d at 802.

### 2.    Arises Out Of

Claims "arise out of" the defendant's contacts with the forum state when there is a causal connection between the contacts and the claims.  See Bristol-Myers, 582 U.S. at 255.  Claims that do not "arise out of" the defendant's contacts may nonetheless "relate to" those contacts.  Ford Motor Co., 592 U.S. at 362.  "The 'arises out of or relates to' standard requires a connection, relationship, or nexus between the plaintiff's claims and the defendant's contacts with the forum."  Bluestar Genomics v. Song, No. 21-CV-04507-

JST, 2024 WL 54701, at *7 (N.D. Cal. Jan 4, 2024).  Because Soelect has not met its burden on the "purposeful direction" prong, the Court need not reach the "arises out of" prong.  See Omeluk, 52 F.3d at 270–71.

### 3.    Reasonableness

"The plaintiff bears the burden on the first two prongs," and once those are established, the defendant must make a "'compelling case' that the exercise of jurisdiction would not be reasonable."  Ayla, 11 F.4th at 983–84.  Because Soelect has not met its burden on the "purposeful direction" prong, the Court need not reach the reasonableness prong.  See Omeluk, 52 F.3d at 270–71.

The Court therefore GRANTS the motion to dismiss based on lack of personal jurisdiction.

### 4.    Jurisdictional Discovery

Soelect argues that if the Court does not deny the motion to dismiss outright, it should give Soelect the opportunity to take jurisdictional discovery.  MTD Opp'n at 9.

A district court has "broad discretion to permit or deny [jurisdictional] discovery, . . . and its decision will not be reversed except 'upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.'"  Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (quoting Data Disc, 557 F.2d at 1285 n.1).  "Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed."  Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003).  "[A] refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'"  Id. (quoting Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430 (9th Cir. 1977)).

A plaintiff must establish a "colorable" basis for personal jurisdiction before jurisdictional discovery will be allowed, offering "'some evidence' tending to establish personal jurisdiction over the defendant."  Jeong v. Nexo Fin. LLC, No. 21-cv-02392-BLF,

2022 WL 174236, at *15 (N.D. Cal. Jan. 19, 2022) (citation omitted).  "This 'colorable' showing should be understood as something less than a prima facie showing."  Id. (citation omitted).  But where a plaintiff's request for discovery is based on "little more than a hunch that it might yield jurisdictionally relevant facts," its denial is within the district court's discretion.  See Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008).

Soelect's one-paragraph request for jurisdictional discovery asserts that it has already "proffered documents showing that HMC directed California-based CRADLE's business activities, including the [MTA]" and that "CRADLE[10] brought Soelect into California to discuss business relations."  MTD Opp'n at 9.  It then argues that those documents "must be resolved in [Soelect's] favor," and, at a minimum, show that Soelect is "entitled to jurisdictional discovery."  Id. (quoting Schwarzenegger, 374 F.3d at 800).

Soelect's conclusory argument is unpersuasive.  Schwarzenegger held that "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor," see Schwarzenegger, 374 F.3d at 800, but, as already discussed, there is no conflict between the statement that HMC directs HATCHI's projects and business activities and the statement that HMC does not control HATCHI's day-to-day operations, see Lee Decl. ¶ 9; MTD Opp'n Ex. A ¶ 4.  Further discovery into HMC's control over HATCHI (not CRADLE, which is just an office) could theoretically support Soelect's agency theory of jurisdiction,[11] but that theory might not even remain viable in this Circuit.  See Williams, 851 F.3d at 1024; MSP Recovery Claims, 2024 WL 3408221, at *4.  And, as discussed above, even if HATCHI's act of negotiating the MTA could be imputed to HMC, that act still does not demonstrate express aiming of tortious conduct into California.  See Ford Motor Co., 592 U.S. at 359 (contacts cannot be "random, isolated, or fortuitous."); E*Healthline.com, 2018 WL 5296291, at *5 ("no contemplation that

---

[10] Notably the complaint alleges that HATCHI, not CRADLE, solicited Soelect's business.  See Compl. ¶ 25.  HATCHI is a Michigan corporation with a principal place of business in Michigan.  See HATCHI Compl. ¶ 3.
[11] Along these lines, Soelect argued at the motion hearing that if HMC's control over HATCHI was "so extensive," then it would have "stepped into the shoes" of HATCHI.

United States District Court
Northern District of California

California would play a role in any of" the resulting conduct between the parties); <u>Picot</u>, 780 F.3d at 1213 (no jurisdiction over Michigan-based defendant who took two trips to California to develop and market technology where the tasks agreed to in the contract occurred outside California).  Soelect's request for jurisdictional discovery is therefore "based on little more than a hunch," <u>see</u> <u>Boschetto</u>, 539 F.3d at 1020, and fails to offer "'some evidence' tending to establish personal jurisdiction over the defendant," <u>see</u> <u>Jeong</u>, 2022 WL 174236, at *15.

A separate reason the Court is disinclined to allow jurisdictional discovery is that Soelect already received discovery from HATCHI about the MTA in the HATCHI Matter. <u>See</u> Stipulated Order Regarding Production of Documents and Electronically Stored Information in HATCHI Matter (No. 22-cv-01342 in N.D. Ill.) (dkt. 31).  Soelect also took some discovery from HMC in the HATCHI Matter, although perhaps not as much as Soelect would have liked.  <u>See</u> Order on Motion to Compel in HATCHI Matter (No. 22-cv-01342 in N.D. Ill.) (dkt. 78) (noting that Soelect believed that production from HMC was incomplete and that Soelect "may attempt to get additional documents"); Parties' Stipulation to Conduct Certain Depositions Following the Close of Deadlines in HATCHI Matter (No. 22-cv-01342 in N.D. Ill.) (dkt. 97) ¶ 4 ("HATCHI was informed that [HMC] will agree to voluntarily make certain witnesses available for depositions in Korea").  Soelect has not articulated how "there is a reasonable probability that the outcome would [be] different [if further] discovery [was] allowed."  <u>See</u> <u>Laub</u>, 342 F.3d at 1093.

**B.     Venue**

HMC next argues that this district is an improper venue.  MTD at 10.

In a civil action, venue is proper: (1) in a judicial district in which any defendant resides, (2) in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) "in a judicial district in which any defendant is subject to the court's personal jurisdiction" if there is no district in which an action may otherwise be brought.  <u>See</u> 28 U.S.C. § 1391(b)(1)–(3).  HMC resides in South Korea, and it is the only

United States District Court
Northern District of California

United States District Court
Northern District of California

1  defendant in this case, so 28 U.S.C. § 1391(b)(1) is unmet.  As discussed above, HMC is

2  not subject to the Court's jurisdiction, and so 28 U.S.C. § 1391(b)(3) is unmet.  The only

3  question is whether Soelect satisfies 28 U.S.C. § 1391(b)(2).  "[I]t is sufficient that a

4  substantial part of the events occurred in the challenged venue, even if a greater part of the

5  events occurred elsewhere."  Vigg v. Jaddou, No. 21-cv-02678-KAW, 2022 WL 3581930,

6  at *2 (N.D. Cal. Aug. 10, 2022) (internal quotations omitted).

7          The complaint alleges that "[v]enue is appropriate in the Northern District of

8  California pursuant to 28 U.S.C. § 1391 because the contract under which HMC was

9  permitted to perform limited testing of Soelect's products was negotiated, in part, in

10  California by HMC's subsidiary company in Santa Clara County."  Compl. ¶ 19.  But

11  HATCHI and Soelect partially negotiating the MTA in this district was not "a substantial

12  part of the events . . . giving rise to the claim."  See 28 U.S.C. § 1391(b)(2); Elofson v.

13  Bivens, No. 15-cv-05761-BLF, 2017 WL 566323, at *14 (N.D. Cal. Feb. 13, 2017) (28

14  U.S.C. § 1391(b)(2) not met where the events that occurred in the Northern District of

15  California "[made] up a very small part of the overall circumstances giving rise to this

16  action").  The negotiation of the MTA was not "a substantial part of the events" here.[12]

17  The complaint does not allege that HATCHI negotiated the MTA in bad faith in order to

18  lure Soelect into sharing its trade secrets so that HMC could steal them a year later.  See

19  Compl. ¶¶ 9–11.

20          In addition, Soelect's injury did not take place in California.  Soelect is a Delaware

21  corporation with a principal place of business in North Carolina.  See Compl. ¶ 16; Myers

---

[12] Soelect complains that HMC "cites no meaningful authority" as to venue, but then itself cites only one case: Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001). See MTD Opp'n at 9.  In that case, the First Circuit held that "venue may be proper in any number of districts" and that courts are to look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim." Uffner, 244 F.3d at 42.  In Uffner, an insured's boat caught fire and sank, the insured filed a claim with his insurer, and the insurer denied the claim.  Id.  The First Circuit concluded that the loss of the boat was "a substantial event giving rise to the claim," and so venue was proper in the district where the boat sank.  Id. at 42–43.  That holding does not move the needle on the venue question here.  Uffner would be more relevant if the First Circuit had held that venue was proper in the district where the insured entered into the insurance contract.

v. Bennett Law Offices, 238 F.3d 1068, 1075–76 (9th Cir. 2001) ("at least one court has found that in a tort action, the locus of the injury was a relevant factor" under 28 U.S.C. § 1391(b)(2)).  All of HMC's conduct occurred in South Korea.  See Compl. ¶¶ 37–38 (testing), 58 (use).  Where the misappropriation and injury all occurred elsewhere and only the contract was signed here, venue is not proper here.  See Zike, LLC v. Catalfumo, No. 6:11-1841-TMC, 2012 WL 12867973, at *3 (D.S.C. Feb. 29, 2012) (venue not proper in South Carolina, even though "[d]efendants made trips to South Carolina during which the NDA was signed," where trade secret misappropriation all occurred "in Florida or elsewhere"); cf. Power Integrations, Inc. v. Penbrothers Int'l Inc., No. 19-cv-2700-SVK, 2019 WL 13202217, at *3 (N.D. Cal. Nov. 1, 2019) (notwithstanding that plaintiff was headquartered in this district and would feel harms in this district, "the location of the threatened misappropriation would appear to be where the Individual Defendants are working, i.e., in the Philippines and/or San Diego" and so "any . . . misappropriation of PI's trade secrets . . . would have taken place in the Philippines and/or San Diego, not this District.").

Accordingly, Soelect has not met 28 U.S.C. § 1391(b)(2), and the Northern District of California is an improper venue.  The Court therefore GRANTS the motion to dismiss based on improper venue.

### C.     Failure to State a DTSA Claim

Finally, HMC argues that the complaint should be dismissed pursuant to Rule 12(b)(6) because Soelect fails to state a claim under the DTSA.  See MTD at 15.  In order for the DTSA to apply to conduct outside of the United States, there must be an "act in furtherance" of the misappropriation that was "committed in the United States."  18 U.S.C. § 1837.  HMC argues that while "Soelect alleges that 'HMC has used [its] trade secrets without Soelect's consent and thereby misappropriated them in violation of the DTSA,'" "Soelect fails to allege that any such use, or any act in furtherance thereof, occurred domestically."  MTD at 15 (quoting Compl. ¶ 58).  The Court agrees.

Soelect argues that the document that created the duty for HMC "to maintain the

secrecy" of Soelect's product samples, the MTA, was negotiated and executed within the United States. Opp'n to MTD at 12–13 (quoting 18 U.S.C. § 1839(5)(B)(ii)(II)).[13] The problem with this is that it was HATCHI, not HMC, who negotiated and executed the MTA. Also, as stated repeatedly above, the complaint does not allege that HATCHI did anything improper in the contracting process. "[A]n act that occurs before the [allegedly wrongful] operation is underway or after it is fully completed is not an act in furtherance of the misappropriation." Bepex Int'l, LLC v. Micron BV, No. 19-cv-2997 (KMM/JFD), 2023 WL 2975699, at *5, 7 (D. Minn. Apr. 17, 2023) (internal quotation marks omitted). "[A]n act in furtherance of misappropriation must manifest that the offense is at work and is not simply a project in the minds of the offenders." Id. (internal quotation marks omitted). Soelect also argues that "other acts in furtherance of the misappropriation . . . occurred domestically," but it points only to "the communications that led up to Soelect's decision to ship its samples to HMC." Opp'n to MTD at 13. But again, those communications were with HATCHI, and Soelect does not allege that those communications were part of the misappropriation.

Soelect cites to a single case that it says supports is position here: Medcenter Holdings Inc. v. WebMD Health Corp., No. 1:20-cv-0053 (ALC), 2021 WL 1178129, at *6 (S.D.N.Y. Mar. 29, 2021). Id. In Medcenter, though, in connection with acquisition talks, the defendant entered into a nondisclosure agreement through which the plaintiff shared its database structure and allowed the defendant to interview the plaintiff's senior leadership and see those employees' confidential employment terms. Id. at *2. One of those employees attended a conference in Miami attended by the defendant's CEO, got access to the plaintiff's data key, and then resigned abruptly and joined the defendant's company. Id. at *3. The plaintiff then learned that the employee had used the data key to access, download, retain, and steal substantial amounts of confidential data from the plaintiff, which the defendant used. Id. The court concluded that the plaintiff had

---

[13] Soelect incorrectly cites to 18 U.S.C. § 1939(5)(B)(ii)(II)). Id.

sufficiently alleged a domestic act in furtherance of the misappropriation by way of the allegations of "the meeting between [the employee and the defendant's CEO] in Miami, FL; the negotiation of the NDA in New York, which [the plaintiff] contends was a Trojan Horse for [the defendant] to learn about [the plaintiff's] employees and proprietary databases; and [the employee's] consulting work with [the defendant], which her contract indicates would take place partly in the United States." Id. at *6.  Those allegations are far more extensive than what Soelect has alleged here.  Here, it was the defendant's subsidiary who negotiated the contract; here, there is no suggestion that the contracting process was in any way nefarious; here, the alleged misappropriation happened entirely in South Korea; and here, there is no alleged use of the misappropriated data in the United States.  If Medcenter is the best case that Soelect can point to, Soelect has failed.  See also ProV Int'l Inc. v. Lucca, No. 8:19-cv-978-T-23AAS, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) (dismissing DTSA claim for failure to state a claim where there was "no allegation suggesting that the defendants attempted to recruit an employee from the United States, that the defendants acquired in the United States the [plaintiff's] 'trade secrets,' or that the defendants used the trade secrets in the United States.").

Because Soelect has not alleged a domestic act in furtherance of the misappropriation, the Court GRANTS the motion to dismiss for failure to state a claim. Soelect asks that "if the Court has concerns about the sufficiency of Soelect's allegations in this regard," it should give Soelect leave to amend.  Opp'n to MTD at 13.  If failure to state a claim was the only basis for dismissal, the Court would do so.  However, because Soelect has also failed as to personal jurisdiction and venue, leave to amend would be futile.  See Leadsinger, 512 F.3d at 532.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss based on lack of personal jurisdiction, improper venue, and failure to state a claim.  The Court does not grant either jurisdictional discovery or leave to amend, and it does not reach the alternative

//

United States District Court
Northern District of California

1    motion to stay.

2         **IT IS SO ORDERED.**

3         Dated: September 24, 2024



     CHARLES R. BREYER
4    United States District Judge